JOHN PACELLA & others *vs.* METROPOLITAN DISTRICT COMMISSION & another.[1]

Suffolk. April 6, 1959. — June 4, 1959.

Present: WILKINS, C.J., RONAN, COUNIHAN, WHITTEMORE, & CUTTER, JJ.

*Public Works. Contract,* For public works, Bidding for contract. *Monopoly. Commonwealth,* Contracts, Purchasing.

G. L. c. 29, § 8A, as amended through St. 1951, c. 401, does not extend the principle of free competitive bidding on State construction contracts so far as to preclude specifications which require the use of a product made only by a particular supplier or of a patented product and do not allow the use of a functionally equal product. [342–346]

The record in a proceeding to enjoin the metropolitan district commission from awarding a contract, involving a substantial expenditure, for construction of water distribution lines did not establish a violation of G. L. c. 29, § 8A, as amended through St. 1951, c. 401, by reason of, or disclose absence of a rational basis for, specifications requiring the contractor to use "prestressed" pipe exclusively made and sold under a patent by one manufacturer which had satisfactorily supplied most of the pipe used by the commission for many years and until the recent expiration of another patent had exclusively made and sold "non-prestressed" pipe also, although it appeared that the commission in the past had consistently permitted substantial use of "non-prestressed" pipe as an alternative, that experts regarded the two types of pipe as functionally equal, and that another manufacturer had recently begun lawfully to manufacture and sell "non-prestressed pipe." [346–347]

A single public construction contract proposed to be entered into by a Massachusetts governmental agency operating within a limited geographical area would not violate G. L. c. 93, § 2, by reason of a requirement of the specifications, not shown to have no rational basis, that the contractor use a particular patented product exclusively manufactured and sold by one manufacturer. [347–348]

A proposed contract with the metropolitan district commission for the construction of water distribution lines in accordance with specifications requiring the laying of "prestressed" pipe not manufactured in Massachusetts would not violate a rule promulgated by the commission on administration and finance that the "contract . . . provide that the successful bidder give preference in the purchase of supplies . . . other things being equal, to supplies . . . manufactured . . . in Massachusetts" where the specifications in effect established that, as to pipe, "other things" were not "equal." [348]

[1] The Treasurer and Receiver General.

PETITION, filed in the Superior Court on October 23, 1957. The case was heard by *Morton, J.*, on a master's report.

*Lewis H. Weinstein*, (*Lawrence A. Sullivan* with him,) for the petitioners.

*Joseph H. Elcock, Jr.*, Assistant Attorney General, (*Gerald Cabitt* with him,) for the respondents.

CUTTER, J. This is a petition under G. L. c. 29, § 63 (inserted by St. 1937, c. 157), by more than twenty-four taxable inhabitants to enjoin the metropolitan district commission (the commission) from awarding the contract hereinafter described and seeking further relief. The case was referred to a master whose report was confirmed. A motion by the petitioners to amend their petition to conform to the proof was denied and a final decree was entered dismissing the petition. The petitioners have appealed from the denial of their motion to amend and from the final decree. Relevant facts are stated as found by the master.

The commission invited sealed proposals for the construction of certain water distribution lines. The opening of the proposals, set for October 24, 1957, was enjoined by an interlocutory decree in this proceeding. As part of the work, "the contractor was to . . . lay . . . 10,000 lineal feet of 60-inch pipe, prestressed; 100 lineal feet of 54-inch pipe, prestressed." The contract is subject to G. L. c. 29, § 8A.

The contractor will purchase some $600,000 worth of reinforced concrete water pipe, steel cylinder type, a material "in common use and sold and delivered in commerce" in Massachusetts. The specifications for such pipe "(. . . having internal diameters of 60 inches, 54 inches, 48 inches and 36 inches) require that all linear sections . . . other than elbows, bends and joints . . . comply with" certain tentative standard specifications of the American Water Works Association. These specifications "call for a particular type of . . . pipe, . . . hereinafter referred to as 'prestressed pipe' . . . which may be manufactured only under a patent held by" Lock Joint Pipe Company (hereinafter called Lock Joint). No "company other than Lock Joint

had ever sold or offered . . . prestressed pipe in Massachusetts to the" commission. Lock Joint "has the exclusive right to preclude others from . . . manufacture and sale of prestressed pipe."

There "is in common use an alternative to prestressed pipe, another type of reinforced concrete . . . pipe, steel cylinder type" (hereinafter called non-prestressed pipe). This "pipe is also manufactured . . . by Lock Joint," whose patent on this type expired several years ago. Prior to the patent's expiration this type of pipe could be made and sold only under the patent. Recently Concrete Pipe Corporation has entered the field "of manufacturing and selling non-prestressed pipe . . . in competition with Lock Joint."

"Prestressed and non-prestressed pipe are designed . . . and used to perform the same function — the carrying of water under heavy pressure . . . are basically similar in design, in materials used and in method of manufacture and are identical in appearance. . . . Both . . . are constructed of a steel core reinforced by steel wire or rods with a layer of concrete inside the core and in the case of non-prestressed with a layer outside the . . . rods."[1]

The master found, after hearing expert testimony, that non-prestressed pipe "is functionally equal to . . . prestressed . . . with respect to (a) the design or operating pressure . . . (b) ultimate strength or bursting pressure . . . (c) resistance to water hammer . . . and (d) resistance to top loads (i.e., external pressure" from above) and "substantially equal with respect to (1) resistance to corro-

---

[1] "The only difference between prestressed and non-prestressed pipe is in the manner by which during . . . manufacture, the reinforcement . . . is accomplished. In . . . prestressed pipe, thin steel wire is wound around outside of the core (and the first layer of the outside concrete coating) under high tension and then covered by a further layer of concrete and mortar. In . . . non-prestressed pipe, stronger steel rods are wrapped around the core under low tension, and then covered by concrete. The difference [is] in the reinforcing steel (thin steel wire being used in the case of prestressed pipe and stronger steel bars being used in the case of non-prestressed pipe); the materials used are the same except for the method of applying the reinforcing steel. In the non-prestressed, a cage is placed over the cylinder and an outside form is placed outside of the cage. Then cement is poured. The method of manufacture is almost identical."

sion, and (2) durability."[1] Weights of the two types made to Lock Joint specifications are the same. The master concluded that Concrete Pipe Corporation (a) at its plant in Dedham makes "non-prestressed pipe which is functionally equal to prestressed pipe in every respect and . . . of the same wall thickness and approximately the same weight" and (b) can manufacture and deliver such non-prestressed pipe "meeting all the requirements for this project" more quickly and expeditiously than could Lock Joint. Prestressed pipe is not being made in Massachusetts and the "specifications . . . preclude the . . . bidder from giving preference . . . to . . . materials manufactured in Massachusetts."

The specifications issued by the commission, although calling for prestressed pipe for all linear sections, called for non-prestressed pipe at elbows, bends and joints where water pressure "is substantially higher . . . than . . . in linear sections." Concrete pallets, however, are placed under the elbows, bends, and joints to protect them.

Until this invitation for proposals, in October, 1957, shortly after Concrete Pipe Corporation had entered the non-prestressed pipe business, the commission "had always specified the size of the pipe . . . and the functional characteristics . . . and had allowed bidders to . . . use either prestressed or non-prestressed pipe . . . . This method . . . did not introduce competition between . . . suppliers, but did give bidders a chance to obtain . . . whichever of the two types of pipe Lock Joint, at that time, was selling most cheaply." Each type of pipe has been supplied on various occasions, but in general "prestressed pipe . . . [has] been supplied only in projects requiring pipe of smaller internal diameter." The master found that the commission and its engineers have consistently "acted upon the opinion that the two types are functionally equal."

1. The petitioners contend that the commission has violated, or proposes to violate, (a) the letter and the spirit

[1] The master found that in "some environments prestressed pipe would be more subject to corrosion and thus less durable than non-prestressed pipe."

of G. L. c. 29, § 8A, (b) the regulations of the commission on administration and finance requiring contractors to give preferences, other things being equal, to goods made in Massachusetts, and (c) common law and statutory (see G. L. c. 93, § 2) provisions against monopolies. General Laws c. 29, § 8A (as amended through St. 1951, c. 401), is set out in the margin.[1]

Statutes of this general character are designed "to establish genuine and open competition after due public advertisement in the letting of contracts . . . to prevent favoritism in awarding such contracts and to secure honest methods of letting contracts in the public interests." See *Morse* v. *Boston*, 253 Mass. 247, 252; *Burt* v. *Municipal Council of Taunton*, 272 Mass. 130, 133. See also *Grande & Son, Inc.* v. *School Housing Comm. of No. Reading*, 334 Mass. 252, 258. In the *Morse* case, 253 Mass. 247, 252, it was said that such "statutes must be interpreted, if reasonably possible, so as to effectuate the purpose of the framers" and "[e]very presumption is to be indulged that the General Court intended to put in force . . . legislation effectual to remedy the evil at which it appears to be aimed." Nevertheless, it was there also pointed out that "[s]tatutes must be interpreted as enacted" and "[o]missions cannot be supplied by the judicial department."

Of course, in administering statutory requirements for public advertisement for bids, "there must be strict compliance with the statutory requirements." *Poorvu Constr. Co. Inc.* v. *Nelson Elec. Co. Inc.* 335 Mass. 545, 552, and cases cited. The petitioners, however, do not suggest that there has been failure to comply with the formal procedural

---

[1] "No officer having charge of any office . . . which receives a periodic appropriation from the commonwealth shall award any contract for the construction . . . at public expense of any . . . physical property . . . if the amount involved therein is in excess of five thousand dollars, unless . . . notice [in the form prescribed by the section has been posted and published as therein prescribed, provisions which appear to have been complied with in this instance] . . . . Proposals for any contract subject to this section . . . . shall be opened in public at a time and place specified in the . . . notice, and . . . shall be open to public inspection. No contract or preliminary plans and specifications shall be split or divided for the purpose of evading the provisions of this section. . . ."

requirements of § 8A. They contend that "public advertisement of specifications which . . . are so unreasonably restrictive in scope as to preclude true competition do not comply with the statutory mandate" and that the situation is one "where the *form* of an invitation for competing bids was complied with . . . yet the *substance* [was] subverted by the deliberate adoption of specifications which required the use of a single manufacturer's product, and foreclosed bidders from offering the functionally equal product of others."

Nothing in the language of § 8A in explicit terms requires the type of competition for which the petitioners here contend. The section is aimed at obtaining free opportunity to bid for all who wish to bid and enabling them to obtain knowledge of the specifications and to make proposals. It contains, however, no express standards governing specifications whatsoever (cf. G. L. c. 7, §§ 30A–30F, inserted by St. 1953, c. 612, § 5, not here applicable) except that specifications shall not "be split or divided for . . . evading the . . . section." Indeed, the section, unless by implication, does not require award to the lowest responsible bidder as in G. L. c. 149, § 44A, as amended through St. 1957, c. 590, § 1, in the case of contracts relating to "any public building."

Although St. 1939, c. 427, which first inserted the section, was entitled "An Act relative to competitive bidding on state contracts," the legislative history of the 1939 statute shows that a provision in the original bill, 1939 House Bill No. 1427, that no contract should be awarded "without having previously obtained free and open competition therefor" does not appear in the section as enacted. These words disappeared when 1939 House Bill No. 2468 was substituted on July 11, 1939. See 1939 House Journal, 1726. Although the significance of this amendment is not clear, it does tend against the view of § 8A for which the petitioners contend.[1]

---

[1] Particularly is this true when it is remembered that, at the same session of the Legislature, there was enacted (St. 1939, c. 480) the somewhat more comprehensive legislation with respect to competitive bidding on public buildings, which first inserted in G. L. c. 149 the provisions (since considerably altered) now found in § 44A and following sections.

The petitioners suggest that courts in other jurisdictions have construed statutes, requiring public advertisement for proposals for government work, as implying also a requirement of specifications which actually invite competition not only (a) among persons bidding against each other for the completed work, but also (b) among suppliers of component materials or equipment. The specifications do not appear to preclude competition among bidders for the prime contract. It can reasonably be inferred from the findings in the master's report that any person who wishes to do so can purchase prestressed pipe from Lock Joint, although there is no express finding to that effect. The complaint is that the specifications require use by bidders of materials made only by a particular supplier.

To establish that the provision of § 8A requiring advertising for bids calls for free competition without unreasonable restrictions in specifications either of principal items or of components, the petitioners rely very considerably upon *Gamewell Co.* v. *Phoenix*, 216 F. 2d 928, 933 (9th Cir.), in which it was held that the evidence supported findings that a contract for a fire alarm system was void as against public policy (under a city charter requiring advertising for bids) where the specifications were so arranged that (p. 936) "no one other than the appellant [the prime contractor] could . . . have submitted a properly engineered competitive bid." The court in that case (pp. 933–934) said that one "object of competitive bidding is to invite competition, by allowing all persons having the ability to furnish the supplies or materials or to perform the work to compete freely without any unreasonable restrictions." To this end "specifications [must] be such that all . . . can familiarize themselves with the details" and "must be free of provisions . . . which would stifle competition." The court went on to say, however, that an invitation for bids "may designate a special product which may be covered by a patent or is manufactured by one bidder" and pointed to cases in which this had been done, suggesting that such "cases go on the assumption that although a patented product is specified, other bidders

can secure it and supply it." See general discussion of the law relating to competitive bidding, McQuillin, Municipal Corporations (3d ed.) §§ 29.28–29.44, 29.49; Rhyne, Municipal Contracts, 37–43; Rhyne, Municipal Law, §§ 10–6, 10–8.[1]

The petitioners in effect contend also that specifications cannot properly specify a patented product unless products functionally equivalent are also permitted, relying on *Nicolson Pavement Co.* v. *Painter,* 35 Cal. 699, 707, *Monaghan* v. *Indianapolis,* 37 Ind. App. 280, 286–295, and *Dean* v. *Charlton,* 23 Wis. 590, 601–602. See *Fineran* v. *Central Bitulithic Paving Co.* 116 Ky. 495, 505–507. These cases may state the rule too broadly as is indicated by cases like *Connecticut* v. *Board of Purchase & Supplies of Stamford,* 111 Conn. 147, 156–162, and *Adams* v. *Van Zandt,* 199 N. Y. S. 225, and by the cases collected in McQuillin, Municipal Corporations (3d ed.) § 29.42, in which it is said that "the broad proposition that a patented article may be specified under the requirement of competitive bidding is generally sustained by cases which announce what appears to be the better rule." There appear to be no very directly applicable Massachusetts precedents. Accordingly, we have tried to give appropriate weight to the conflicting authorities elsewhere, many of which, like the *Gamewell* case (216 F. 2d 928), rest on situations of fact different in various respects from that now before us.

It is not necessary to determine what would be the effect of (a) fraud, (b) disregard or evasion of standards established by the Legislature or other legislative body, or (c) intentional discriminatory action or favoritism. See, however, *Kelley* v. *School Comm. of Watertown,* 330 Mass. 150, 153–

---

[1] See also *National Sur. Co.* v. *Kansas City Hydraulic Press Brick Co.* 73 Kans. 196, 203 (contract held illegal where one brand of brick specified); *Waszen* v. *Atlantic City,* 1 N. J. 272, 282–283 (highly indefinite specifications regarded as giving a particular bidder undue advantage); *Smith* v. *Syracuse Improvement Co.* 161 N. Y. 484, 488–490 (under a "statute, which contemplates a full and free competition in all things," specifications which called for brick made by a particular manufacturer, when comparable brick was available from others, were improper), but see *Knowles* v. *New York,* 176 N. Y. 430, 437. Cf. *Safford* v. *Lowell,* 255 Mass. 220; *Raynor* v. *Commissioners of Louisburg,* 220 N. C. 348, dealing with what constitutes an "emergency" justifying a departure from usual principles of bidding.

154. We assume that, where such circumstances appear, ingeniously contrived specifications operating to the benefit of a particular bidder or subsupplier, even under a statute as general in terms as G. L. c. 29, § 8A, could hardly be permitted to thwart the legislative objective of public benefit through public advertisement for bids and public examination of bids once opened. Certainly, also, the most careful scrutiny in the public interest is appropriate in any case where specifications appear to have a restrictive effect and possible discriminatory impact. It is not for us, however, judicially to impose rigid standards and requirements which the Legislature has not seen fit clearly to impose in § 8A, and which the legislative history suggests may have been intentionally omitted. We find in § 8A no absolute prohibition of the specification of patented articles in public works and no inflexible limitation of the discretion of public officials to prescribe specifications. Even if it be assumed that more stringent regulation may be desirable to protect the public, framing of such regulation is for the Legislature.

We interpret the master's findings as establishing that the commission intentionally prescribed specifications for prestressed pipe, knowing (a) that only one manufacturer made such pipe, (b) that the commission in the past had permitted substantially consistent use of non-prestressed pipe, as an alternative, (c) that at least highly competent expert opinion, including some of its own responsible engineers, regarded the two types of pipe as functionally equal, and (d) that a Massachusetts corporation had recently begun to manufacture non-prestressed pipe which until recently had been the patented monopoly of Lock Joint. All these circumstances at most cast doubt on the wisdom of the commission's action and make appropriate review of that action. The experts' opinion, that the commission might appropriately have set wider specifications permitting use of non-prestressed pipe, may well be highly persuasive. The master obviously found it so. The responsibility for this large project involving substantial expenditure, however, is that of the commission (see G. L. c. 92, § 15), not the experts, the master, or the courts.

See *Dealtry* v. *Selectmen of Watertown*, 279 Mass. 22, 28. See also *Burke* v. *Metropolitan Dist. Commn.* 262 Mass. 70, 75.

The commission has not been shown to be without justification for what it did. Some minor differences in the two types of pipe are shown. Lock Joint is shown to have supplied most of the pipe used by the commission for many years and there appears to be no question that its products are satisfactory. The new competitor could not lawfully have manufactured non-prestressed pipe prior to the recent expiration of Lock Joint's patent. The commission could have regarded it as new to the field and its product as untested, and may have taken the view that the specifications should be such as would ensure use of a well tested product.

It would have been much preferable to have had before us a comprehensive statement of the commission's reasons leading to the decision which has provoked inquiry. We find none in the record. Nevertheless, we cannot say on this record that there is such absence of rational basis for the commission's decision that, from that absence alone, unlawful action must be inferred. The trial judge on the master's report must have concluded that no violation of § 8A had been clearly established, and that it was not for him to substitute his judgment for that of the commission. See *Stockus* v. *Boston Housing Authy.* 304 Mass. 507, 509, 511–512 (where the court pointed out that "[e]very presumption must be indulged in as to the integrity and impartiality of . . . [the] conduct" of the public officials there defendants); *M. Doyle & Co. Inc.* v. *Commissioner of Pub. Works of Boston,* 328 Mass. 269, 271–272; *Despatchers' Cafe Inc.* v. *Somerville Housing Authy.* 332 Mass. 259, 261. We agree with the trial judge's conclusion.

2. The petitioners contend that the proposed contract would be in violation of G. L. c. 93, § 2.[1] The facts found

---

[1] Section 2 reads: "Every contract . . . in violation of the common law whereby a monopoly in the manufacture . . . or sale in the commonwealth of any article . . . in common use . . . may be created . . . or whereby competition in the commonwealth in the supply or price of any such article . . . may be restrained . . . or whereby the price of any article . . . in common use . . . may be unduly enhanced within the commonwealth, is hereby declared to be against public policy, illegal and void."

by the master fall short of showing any such violation because of the requirement of use of a particular patented product in a single contract for a governmental agency operating within a limited area in the Commonwealth. Particularly is this true where, upon this record, it cannot be said that the commission's requirement of prestressed pipe was without rational basis. See *Foster* v. *Shubert Holding Co.* 316 Mass. 470, 472–473; *Elm Farm Foods Co.* v. *Cifrino*, 328 Mass. 549, 554–555 (which states that § 2 is "to be construed strictly").

3. There is no merit to the petitioners' contention that the proposed contract is illegal because it forecloses contractors from giving preference, other things being equal, to the use of products made in Massachusetts in violation of Rule 16 of the regulations regarding purchasing promulgated by the commission on administration and finance pursuant to G. L. c. 7, §§ 22 (17) and 23A (see St. 1933, c. 353, §§ 1,[1] 2). Rule 16, as the master found, "requires that the contract . . . provide that the successful bidder give preference in the purchase of supplies . . . other things being equal, to supplies . . . manufactured . . . in Massachusetts." Assuming the regulation to be applicable and valid, the specifications (which on this record we cannot say were improperly formulated) in effect established that, as to pipe, "other things" were not "equal." See Rep. Atty. Gen. (1956) 44–45.

4. In the light of what has already been decided, it is not necessary for us to consider (a) the contention of the commission that the petitioners were without standing to bring this petition, or (b) the propriety of the denial of the petitioners' motion to amend. The case has been considered as if the petition had been in conformity with the facts found by the master.

5. The interlocutory decree denying the motion to amend and the final decree are affirmed.

*So ordered.*

---

[1] See subsequent amendment, St. 1958, c. 638.