JOHN E. BRENNAN, THIRD, & others [1] vs. THE GOVERNOR
& others. [2]

Worcester. June 14, 1989. — July 11, 1989.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Statute,* Construction. *Public Works,* Specifications. *Contract,* Public
works, Bidding for contract. *Commonwealth,* Contracts. *Practice, Civil,*
Summary judgment. *Words,* "Shall."

Sections 40K, 40L, and 40M of G. L. c. 7, the Ward Commission legislation,
directing the deputy commissioner of the Division of Capital Planning
and Operations to establish an inventory of property owned by public
agencies, to adopt rules and regulations for the acquisition of real property
and to form an advisory council, were held to be not mandatory prerequi-
sites under that legislation to the Commonwealth's acquisition of certain
real property. [394-395]
Summary judgment for the defendants was correctly entered on a claim under
G. L. c. 29, § 63, challenging the expenditures of State funds to acquire
certain real property as violative of the intent of the Ward Commission
legislation, see St. 1980, c. 579, where the plaintiffs did not set forth
facts demonstrating a violation of a specific provision of State law that
would render the acquisition an unlawful exercise of power. [395-396]
Plaintiffs, citizens and taxpayers, challenging the legality of expending State
funds to acquire certain real property, did not demonstrate that the
specifications in the request for proposals seeking property to be acquired
were without rational basis. [396-397]
The Secretary of the Executive Office of Human Services properly within his
discretion sought a waiver of a requirement to advertise for proposals
under G. L. c. 7, § 40H, during the process of the Commonwealth's
acquisition of certain real property. [397]
In a civil action in which the state of mind or knowledge of officials acting on
behalf of the Commonwealth was not an issue, there was no error in
the judge's granting summary judgment for the defendants before the

[1] Twenty-six citizens and taxpayers of the Commonwealth.

[2] The deputy commissioner of the Division of Capital Planning and
Operations, the Secretary of the Executive Office of Human Services, the
Commissioner of Correction, and the director of the office of real property
of the Division of Capital Planning and Operations.

plaintiffs had completed discovery regarding the defendants' state of mind. [397-398]

A study required by St. 1986, c. 658, § 5, conducted by State officials to evaluate the feasibility of locating a medium security correctional facility on a certain site, complied with the definition of such a study set forth in the applicable statute, G. L. c. 7, § 39A (*w*). [398-400]

CIVIL ACTION commenced in the Superior Court Department on April 5, 1988.

The case was heard by *James P. Donohue*, J., on a motion for summary judgment.

After interlocutory review by *O'Connor*, J., in the Supreme Judicial Court for the county of Suffolk, further proceedings for summary judgment were heard by *Donohue*, J., in the Superior Court Department.

The Supreme Judicial Court granted a request for direct appellate review.

The case was submitted on briefs.

*James M. Shannon*, Attorney General, *Carl Valvo & Lawrence Fletcher-Hill*, Assistant Attorneys General, for the defendants.

*John O. Mirick & Joseph M. Hamilton* for the plaintiffs.

NOLAN, J. This is a petition under G. L. c. 29, § 63 (1986 ed.), by more than twenty-four taxpayers and citizens of the Commonwealth who challenge the legality of expending State funds to acquire the Pioneer Valley Academy (academy) in New Braintree as the site for a new medium security prison. In this action, the plaintiffs challenge three orders for summary judgment, each of which decided a portion of their complaint.

In August, 1988, a single justice of this court, reviewing a Superior Court decision, allowed the defendants' motion for summary judgment in so far as it sought dismissal of the plaintiffs' claims under G. L. c. 29, § 63, that the defendant failed to comply with G. L. c. 7, §§ 40K, 40L, and 40M (Ward Commission legislation). See St. 1980, c. 579. In December, 1988, a Superior Court judge disposed of the remainder of the plaintiffs' claims involving the Ward Commission legislation when he ruled that the plaintiffs did not set forth facts showing

that the defendants violated the intent of the Ward Commission legislation, and thus failed to state a cause of action under G. L. c. 29, § 63. In October, 1988, a Superior Court judge granted summary judgment for the defendants on the second count of the plaintiffs' complaint, ruling that the feasibility report published by the defendants constituted a "study" as that term is defined by G. L. c. 7, § 39A (1986 ed.). After entry of judgment the plaintiffs appealed to the Appeals Court, and we granted their application for direct appellate review.[3]

1. *Factual background.* The controversy over locating a prison in New Braintree dates back to 1984, when the Commonwealth first began considering the academy as a potential site for a correctional facility. The Secretary of the Executive Office of Human Services (Secretary) recommended in a November, 1985, memorandum that the Commonwealth aggressively pursue the academy as a site for a new prison. In June, 1986, the Governor publicly announced his intention to locate a medium security prison in New Braintree.

The defendants contend that the academy is a highly desirable site because, as a former residential school, located on approximately 780 acres, it contains the basic facilities needed for a prison: dormitories with individual rooms; a cafeteria; an institutional kitchen; space for administrative offices; recreational facilities, and room for further construction. A major advantage, defendants assert, is that existing buildings can be renovated to provide 240 beds within eighteen to twenty-four months after acquisition, compared to from five to six years to design and construct a new prison. The plaintiffs, in contrast, claim that the academy is an inappropriate facility because it will need extensive rebuilding to meet building code requirements, and will result in an extraordinary waste of money.

In December, 1986, the Legislature responded to what it termed "the serious overcrowding problems in the correctional institutions of the Commonwealth" by passing St. 1986, c. 658. The legislation appropriated funds for constructing several new

---

[3] We agreed to render a decision on the substance of the parties' appellate arguments before the Commonwealth transferred funds for taking the property, thus making the plaintiffs' request for injunctive relief unnecessary.

prisons. Section 10 of c. 658 urged the executive branch to use procurement methods that would alleviate the overcrowded conditions "in as little time as possible while maintaining economy of construction." Section 5 of c. 658 authorized the Division of Capital Planning and Operations (DCPO) to expend $72 million for "studies, the preparation of plans, the acquisition of land . . . and for the construction, including furnishings and equipment, of two medium security correctional facilities each of a capacity not to exceed five hundred beds." Section 5 conditioned the acquisition of land on the completion of a study, as defined in G. L. c. 7, § 39A, evaluating the feasibility of locating a medium security facility on such land.

In January, 1987, the DCPO published "Request for Proposals to Sell Property to the Commonwealth for Development of a Medium Security Prison in Central or Western Massachusetts" (request for proposals). The request for proposals described the basic site requirements: at least 75,000 square feet of existing building space which could be renovated within two years for a 250 bed medium security prison; sufficient land for recreation; and topography and soils that would allow for future construction. The defendants received only two responses to the request for proposals. The current owners of the academy submitted a proposal, as did the owners of property in Colrain. The Colrain proposal was rejected because the existing building size and the acreage were too small, and the buildings did not readily lend themselves to renovation.

In July, 1988, the DCPO published the "Pioneer Valley Academy Feasibility Report" (feasibility report) to satisfy the requirement of St. 1986, c. 658, § 5, that it complete a feasibility study before acquiring the land for a medium security prison. The plaintiffs assert that this feasibility report was deficient because it did not "identify and evaluate alternative solutions" or "evaluate the financial, environmental, and other aspects of such solutions." G. L. c. 7, § 39A (*w*) (1986 ed.). See St. 1986, c. 568, § 5.

In reviewing each of these orders for summary judgment against the plaintiffs, we will employ the same test: (1) whether after consideration of the pleadings, depositions, answers to

interrogatories and affidavits, a genuine issue of material fact exists and (2) whether the moving party is entitled to judgment as a matter of law. Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974).

2. *Ward Commission legislation*. The plaintiffs argue that the defendants' failure to comply with G. L. c. 7, §§ 40K, 40L, and 40M, renders the proposed acquisition of the academy property in New Braintree an unlawful exercise of power by an agent of the Commonwealth that may be restrained under G. L. c. 29, § 63. The defendants contend that they do not have to comply with §§ 40K, 40L, and 40M, to render their acquisition of the academy valid. As there was no disputed issue of fact, the defendants moved for summary judgment on this issue, and a Superior Court judge denied the motion. A single justice of this court reviewed the denial of summary judgment and reversed the lower court, granting the defendants' motion for summary judgment. The single justice ruled only on the allegation pertaining to G. L. c. 7, §§ 40K, 40L, and 40M, because he determined that only that portion of the plaintiffs' claims under the Ward Commission legislation was before the Superior Court. Sections 40K, 40L, and 40M, direct the deputy commissioner of capital planning and operations to establish an inventory of property owned by public agencies, to adopt rules and regulations for the acquisition of real property, and to form an advisory council. The purpose of these provisions, and others in the Ward Commission legislation, is stated in its preamble: to provide a system of public construction which would provide buildings of the highest quality, at a fair cost, in a reasonable time, making maximum use of the Commonwealth's existing resources, while reducing opportunities for corruption, favoritism, and political influence. St. 1980, c. 579. The plaintiffs argue that taxpayers have the right to insist that provisions intended for their security shall be observed. They point to the use of the word "shall" in §§ 40K, 40L, and 40M, and cite cases that the word "shall" commonly imports an imperative and not a precatory suggestion. *Massachusetts Soc'y of Graduate Physical Therapists, Inc.* v. *Board of Registration in Medicine*, 330 Mass. 601, 603 (1953). *McCarty* v. *Boyden*, 275 Mass. 91, 93 (1931).

While the plaintiffs are correct that G. L. c. 7, §§ 40K, 40L, and 40M, use the imperative "shall," there is no language in any of these sections indicating that the Legislature intended any particular consequence to result from the deputy commissioner's failure so to comply. The Legislature is presumed to understand and to intend all consequences of its own actions. *Spaulding* v. *McConnell*, 307 Mass. 144, 149 (1940). As the single justice pointed out, the Legislature demonstrated, when it drafted another section of the Ward Commission legislation, G. L. c. 7, § 40H, that it knew how to require explicitly that the deputy commissioner perform certain acts before the transfer of a deed could be completed. The plaintiffs attempt to distinguish § 40H, on the ground that it referred only to the Commonwealth's selling of property and not to its acquisition of property. Even if that argument were persuasive, there is another section of the Ward Commission legislation, now codified at G. L. c. 7, § 40J, that establishes the requirement of filing a disclosure statement before a transfer is completed, whether the Commonwealth is the seller or the buyer. The fact that the Legislature made some actions mandatory before a transfer could be valid in sections of the law that are in close juxtaposition to the disputed sections makes it clear to us that the Legislature did not intend to make compliance with §§ 40K, 40L, and 40M, a prerequisite to the Commonwealth's acquisition of property.

Since the single justice did not reach the plaintiffs' claim that State officials violated the general intent of the Ward Commission legislation, the issue was decided by a Superior Court judge, who ruled in favor of the defendants. The plaintiffs allege that the defendants violated the intent of the Ward Commission legislation because defendants knew of, but either ignored or intentionally disregarded, other "appropriate locations" for a medium security prison. The plaintiffs argue that we should rely on the preamble of the Ward Commission legislation in determining whether the defendants violated the intent or spirit of the legislation. Statements regarding the scope or purpose of an act that appear in its preamble may aid the construction of doubtful clauses, but they cannot control the

plain provisions of the statute. *Milk Control Bd.* v. *Gosselin's Dairy, Inc.*, 301 Mass. 174, 179-180 (1938). These plaintiffs can only state a cause of action if they can show that the defendants violated a specific provision of State law and, thus, rendered the proposed acquisition of the academy an unlawful exercise of power under G. L. c. 29, § 63 (1986 ed.).

The plaintiffs contend that the defendants' request for proposals, which was advertised, as required under G. L. c. 7, § 40H, was drafted narrowly to discourage or exclude other potential sites. The plaintiffs cite *Pacella* v. *Metropolitan Dist. Comm'n*, 339 Mass. 338 (1959), for the proposition that, where officials have drawn specifications so restrictively that only one supplier could fulfil the requirements, that action warrants judicial review. *Id.* at 346. The *Pacella* case goes on to state, however, that, if there is a rational basis for the officials' decision to write narrowly drafted specifications, then it is not for the court to substitute its judgment for that of the official who has the authority by statute to draft the specifications. *Id.* at 347.

Even if the request for proposals was as narrowly drawn as the bid specifications in *Pacella*, which does not seem to be the case, State officials had a rational basis for writing the request for proposals as they did. The request for proposals specified that the deputy commissioner sought a site with buildings which could be renovated into a 250 bed medium security prison within two years or less; that the site have water, a sewer or septic system, electrical and telephone utilities available; and that the space be configured "to accommodate food service, dining, educational/vocational training, office, storage, recreation, laundry, ample toilet and shower facilities, and parking." The request for proposals also specified that the site be located in Worcester, Franklin, Hampshire, Hampden, or Berkshire County, that the site be at least fifty acres and located within fifty miles of a major population center or close to public transportation. None of these specifications is irrational. Given the severe overcrowding in State prisons, and the Legislature's exhortation in St. 1986, c. 658, § 10, to obtain facilities in as little time as possible, the officials' decision

to seek a site that could be renovated and ready within two years was rational. The requirements that the site be at least fifty acres and no more than fifty miles from a population center are enunciated in the Department of Correction's siting regulations, which the plaintiffs have not challenged. The specification that the site be in one of the five named counties, which are located in the central and western parts of the State, was designed to distribute the prison population more evenly throughout the State, and this is a rational goal. Finally, the officials' remaining specifications regarding facilities for kitchen, storage, recreation, and other needs, were clearly rationally linked to the proper operation of a prison.

The plaintiffs argue that the defendants attempted to circumvent the Ward Commission legislation by seeking to have the academy property declared a "unique" site. Under G. L. c. 7, § 40H, the requirement that the State advertise for proposals may be waived if a needed property is unique. The deputy commissioner of the DCPO rejected the request of the Secretary to declare the academy a unique site. The State then advertised for proposals as required by § 40H. The Secretary's request for a waiver under the terms of § 40H for the academy property does not support a claim that the defendants violated § 40H, since such a request was clearly within his discretion.

Finally, the plaintiffs contend that the judge erred in granting summary judgment for the defendants before discovery was complete because there is a genuine issue of material fact regarding the state of mind of the defendants. The plaintiffs allege that the defendants knew of other potential sites, but ignored or excluded them from consideration.

It is true that summary judgment is disfavored where knowledge or state of mind is an issue. *Quincy Mut. Fire Ins. Co.* v. *Abernathy*, 393 Mass. 81, 86 (1984), and cases cited. The state of mind or knowledge of the defendants is not an issue, however, where, as here, an official has decided to draft a request for proposals that is a rational specification of State needs. "Where no law has been violated, and no statute has made good faith essential to valid action, acts of administrative officers cannot be attacked in judicial proceedings on the

ground that in fact those officers were not governed by the highest standards of impartial and unselfish performance of public duty." *Kelley* v. *School Comm. of Watertown*, 330 Mass. 150, 154 (1953), quoting *Gibney* v. *Mayor of Fall River*, 306 Mass. 561, 566 (1940). Because state of mind or knowledge was not an issue, the judge did not err in granting summary judgment without allowing the plaintiffs' requests for production of documents. As there was no genuine issue of material fact, the defendants were entitled to summary judgment as a matter of law on the plaintiffs' claim that the defendants violated the intent of the Ward Commission legislation.

3. *Feasibility report.* The plaintiffs appeal from the Superior Court judge's allowance of the defendants' cross motion for summary judgment on count 2 of the second amended complaint. This count alleges that the feasibility report published by the deputy commissioner failed to satisfy statutory requirements, thus prohibiting the proposed acquisition under G. L. c. 29, § 63. In particular, they contend that the report is fatally flawed because of its failure to discuss the feasibility of sites other than the academy. Moreover, they claim that the report's cursory discussion of operating costs and proposed construction methods renders it inadequate. The issue of the report's legal sufficiency is a question of law readily susceptible to review on appeal from summary judgment. See *Attorney Gen.* v. *Bailey*, 386 Mass. 367, 371, cert. denied sub nom. *Bailey* v. *Bellotti*, 459 U.S. 970 (1982).

The feasibility study at issue here was required by St. 1986, c. 658, § 5, authorizing the appropriation of funds for the acquisition of property for a medium security prison.[4]

---

[4] Statute 1986, c. 658, § 5, provides: "The division of capital planning and operations is hereby authorized to expend seventy-two million dollars for studies, the preparation of plans, the acquisition of land by purchase, gift, land exchange, eminent domain, lease or otherwise, and for the construction, including furnishings and equipment, of two medium security correctional facilities each of a capacity not to exceed five hundred beds; provided, however, that no funds shall be expended for the acquisition of such land until the deputy commissioner of said division completes a study, as defined in section thirty-nine A of chapter seven of the General Laws, evaluating the feasibility of locating a medium security correctional facility on such land."

The statute requires a "study," as defined by G. L. c. 7, § 39A, to evaluate the feasibility of locating a medium security correctional facility on such land. Section 39A (*w*) defines "study" as: "a feasibility or other study to identify and evaluate alternative solutions to and recommend a solution to the needs and requirements defined by the public agency proposing a capital facility project which may involve a further definition of that agency's needs and requirements, gather additional information on the nature of the project, develop and review potential solutions to those needs and requirements, evaluate the financial, environmental, and other aspects of such solutions, estimate the degree to which solutions do not fulfill proposed objectives and criteria, and recommend a means of project implementation and site acquisition."

The plaintiffs contend that, in order to comply with these statutes, the DCPO must evaluate alternative sites. The Superior Court judge, however, rejected this contention, stating: "The study contemplated by the statute is one which evaluates 'the feasibility of locating a medium security correctional facility *on such land*,' c. 658, § 5; i.e., all that the statute requires is a careful study of the proposed site to determine whether that site is a feasible location for a medium security prison. There is no requirement that DCPO evaluate several alternative sites . . . ." In G. L. c. 7, § 39A (*w*), "alternative" modifies "solutions," not sites. Statutory language is the principal source of insight into legislative intent, *Commonwealth* v. *Lightfoot*, 391 Mass. 718, 720 (1984), and statutes should be construed as they are written, *Brennan* v. *Election Comm'rs of Boston*, 310 Mass. 784, 789 (1942). We agree with the Superior Court judge that where, as here, the language of a statute is clear, we shall not rewrite the law in a manner unintended by the Legislature.

Implicit in the judge's order, is that the defendants' report complied with the statutory requirements of § 39A by addressing "alternative solutions."[5] We agree. The report did examine

---

[5] The taxpayers direct our attention to a letter dated March 24, 1989, as support for the legal insufficiency of the defendants' feasibility report. This

alternative solutions on various environmental, construction, and cost issues. In particular, the study offered alternative solutions to developing adequate waste disposal and drinking water sources on the academy property. The report also compared the cost of new construction with renovating the existing structures on the premises.

For example, the report explains that one area on the academy grounds was tested as a possible site for locating a leaching field for waste water disposal. This area was rejected because the soil could not accommodate the degree of waste anticipated once the prison became operational. An alternative location was found where the soil was of the quality capable of supporting such waste. Tests were also run to determine whether the site could provide fresh water sufficient to service prison needs. Water samples were tested to assure compliance with Federal and State standards for drinking water. The study also examined the potential effect that the sewage disposal might have on the supply of fresh water. Moreover, the report details the advantages in terms of cost and time of renovating the academy's buildings, as opposed to constructing an entirely new prison. Tests run on the soil surrounding the existing buildings demonstrated that the soil was capable of supporting future construction. We believe that the report satisfied the statutory requirements as provided by G. L. c. 7, § 39A.

Accordingly, we affirm the judge's allowance of summary judgment for the defendants as to the legal sufficiency of the feasibility report.

For the reasons discussed above, we also affirm the single justice's allowance of summary judgment for the defendants on the plaintiffs' claims regarding G. L. c. 7, §§ 40K, 40L, and 40M, and affirm the Superior Court judge's allowance of summary judgment for the defendants on the plaintiffs' claim regarding the general intent of the Ward Commission legislation.

The judgment is affirmed.

*So ordered.*

letter, however, was not before the trial judge and is not a part of the record on appeal. Accordingly, we decline to consider it. Mass. R. A. P. 8 (a), as amended, 378 Mass. 932 (1979).