Gershengorn, Wendie I., J.
Introduction
Plaintiff D&D Enterprises, Inc. (“D&D” or “plaintiff’), a general contractor, brought this action seeking damages from the Malden Redevelopment Authority (“MRA”) for alleged violations of the public contract bidding law G.L.c. 30, §39M.[1] This matter is now before the court on the defendant’s motion for summary judgment. For the following reasons, the defendant’s motion is ALLOWED.
Background
The facts are largely undisputed. In late 2005, MRA engaged the engineering firm of Fay, Spofford, & Thorndike, LLC (“FST”) as project manager for the proposed reconstruction of the baseball fields at Ma-plewood Park in Malden (the “project”). In turn, FST engaged Geller Sport as a consultant on the project. The project contemplated the grading and laying of a synthetic turf athletic field at Maplewood Park. In late 2005 and early 2006, FST and Geller drafted the Contract Documents later issued by MRA in connection with an Invitation to Bid.
On or about April 19, 2006, MRA issued the Invitation to Bid for the installation of a synthetic athletic field surface at Maplewood Park in Malden, pursuant to G.L.c. 30, §39M. The detailed requirements for the project were set forth in the Contract Documents, made available to all bidders at the offices of FST. The relevant section thereof read: “Infilled Synthetic Turf System installation shall be performed by an experienced specialty contractor which shall have lain at least fifteen (15) outdoor athletic field systems of 50,000 s.f or greater of the type and installation process herein specified within the last 5-year period including at least one (1) synthetic baseballjield (“synthetic field-laying experience” or “experience requirement”).” (Emphasis added.)
Bids were due to FST by 11:00 a.m., on May 4, 2006. Six parties submitted bids. The plaintiff submitted the lowest bid at $787,199.58. An entity known as R.A.D. Corp. (“RAD”) submitted the next lowest bid, in an amount of $857,200.00.
None of the materials submitted by the plaintiff showed that the plaintiff had any experience in the installation of a synthetic baseball field within the preceding five years. Realizing that the plaintiffs bid lacked such information, FST contacted D&D and requested further information as to its synthetic field-laying experience. In response, the plaintiff submitted documentation evidencing the extensive synthetic field-laying experience of an entity known as A-Turf, Inc. (“A-Turf j.[2] The plaintiff, however, again failed to submit any documentation showing that D&D itself had any synthetic field-laying experience.
Upon the recommendation of its consultant Geller Sports, FST notified the plaintiff that it was unable to accept its bid for the project because D&D had failed to demonstrate its own synthetic field-laying experience. MRA therefore awarded the contract to RAD, the next highest bidder.
On or about May 30, 2006, D&D filed a timely bid protest with the Attorney General’s Business and Labor Protection Bureau (“BLPB”). After a hearing, the BLPB denied D&D’s protest in a written decision. The plaintiff then filed this lawsuit, asserting that the MRA acted arbitrarily and capriciously in making its decision not to award the contract to D&D and that such action was illegal.
Discussion
This court will grant summary judgment where the record shows that there are no genuine disputes of material fact and that the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Commissioner of Corrections, 390 Mass. 419, 422 (1983). Moreover, the moving party bears the burden of showing that there is no genuine dispute of material fact and that it is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 711 (1991). Here, D&D does not assert, and nor does the record show, a genuine dispute of material fact. Rather, the parties dispute turns upon whether MRA’s decision not to award the contract complied with the spirit of G.L.c. 30, §39M as a matter of law.
“(W]here officials have drawn specifications [for an invitation for bids] so restrictively that only one supplier could fulfil the requirements, that action warrants judicial review. .. [If, however] there is a rational basis for the officials’ decision to write narrowly drafted specifications, then it is not for the court to substitute its judgment for that of the official who has *262 the authority by statute to draft the specifications.” Brennan v. The Governor, 405 Mass. 390, 296 (1989), citing Pacella v. Metropolitan Dist. Comm’n, 339 Mass. 338, 346-47 (1959). Awarding authorities are vested with the power to determine the responsibility and eligibility of bidders. Capuano, Inc. v. School Building Committee of Wilbraham, 330 Mass. 494, 496. Further, courts afford awarding authorities wide discretion in their decisions as to the competency of bidders. Capuano, 330 Mass. at 496.
This court is thus called upon to determine, as a matter of law, whether MRA had a rational basis for its synthetic field-laying experience requirement. MRA asserts that the purpose of the synthetic field-laying experience requirement was twofold. First, MRA reasoned that the requirement would increase the contractor’s accountability for the completion of the project in accordance with the contract documents. Second, MRA reasoned the requirements would increase the likelihood of a successful project.
The experience requirement worked directly to further these goals. Contractors who have engaged in the laying of a synthetic field in the past have a general familiarity with the process. It can reasonably be inferred that in prior instances contractors with synthetic field-laying experience would have worked from a master plan similar to the Contract Documents, and would thus be more likely to ensure adherence thereto on the project. Moreover, prior experience generally works to educate an individual or an entiiy as to the pitfalls and mistakes that would lead to an unsuccessful project. Contractors with such knowledge would seemingly apply it and avoid those same pitfalls on the project, thereby increasing the probability of a successful.
The MRA has a duty to ensure the responsible and efficient use of tax dollars entrusted to it. MRA acted in this spirit in setting the dual goals of adhering to the detailed and professional specifications in the Contract Documents and seeking a successful outcome for the project. This court cannot say, and the plaintiff has not shown, that the synthetic field-laying experience requirement is not rationally related to these goals.
The plaintiff also seems to make the argument that MRA’s Invitation for Bids placed it on an unequal footing because it misunderstood the wording of the Contract Documents. The plaintiff asserts that it understood the Invitation to Bid to require that the subcontractor have synthetic field-laying experience. “So long as bidders have the opportunity to bid in the same way, on the same information, and to bear the same risk of rejection, fairness and equality are preserved.” Department of Labor and Industries v. Boston Water and Sewer Comm’n, 18 Mass.App.Ct. 621, 626 (1984), citing E.A. Berman Co. v. Marlborough, 11 Mass.App.Ct. 1009, 1010 (1981).
The plaintiffs contentions in this regard are without merit. First, the contract documents, while not the model of clarity, clearly indicate that the “specialty contractor,” as opposed to the “specialty vendor” (i.e., the subcontractor), must possess the requisite experience. That the 5 other bidders on the project all submitted bids evidencing their experience speaks to the clarity of the documents. Here, the bidding parties all stood on the same footing, proceeding upon the same information, and bearing the same risk of rejection.
Conclusion
Therefore, it is hereby ORDERED that the defendant’s motion for summary judgment is ALLOWED.

The plaintiffs complaint seems to suggest that the plaintiff seeks relief under G.L.c. 149, §44A, et seq., statutory provisions pertaining to the awarding of public contracts for the construction of buildings. Because this dispute arises over the construction of a baseball field (and not a building), this court assumes that the plaintiff intended to proceed under G.L.c. 30, §39M, a less onerous provision governing public works.

The plaintiff asserts that both D&D and RAD intended to use A-Turf as the subcontractor for the project