Sosman, J.
Plaintiffs, a disappointed bidder and ten taxpayers of the Town of Westborough, have brought the present action by way of certiorari seeking to overturn the decision of the Town to lease Town property to one John Pardee. Defendants are the Town of Westborough and the Town selectmen who supported and voted for the award of the lease to Pardee.
The parties have filed cross-motions for declaratory and injunctive relief, both sides being of the view that the issues can be decided on the record of the underlying bid proceedings without evidentiary hearing. For the following reasons, the court allows plaintiffs’ motion, denies defendants’ motion, and orders that the lease be awarded to plaintiff Hack’s & Hack’s, Inc.
Facts
The following facts appear from the Town’s records pertaining to this procurement and are not disputed:
For the last twenty years, the Town has owned and operated a municipal golf course on West Main Street *105 in Westborough. For approximately the last ten years, the Town has leased the restaurant facility located at the golf course to John Pardee, doing business as “On The Green.” During Pardee’s tenancy, On The Green has been open to the public, serving lunch and dinner. In 1990, the Town entered into a three-year lease with Pardee.
In 1994, as Pardee’s lease was about to expire, the Town determined that the restaurant premises needed renovations to bring the facility into compliance with the Americans with Disabilities Act. In order to get the restaurant lessee to undertake and pay for those renovations, the Town decided that it should offer a fifteen-year lease, which would give the lessee a longer period to recover the cost of the renovations.
In September 1994, the Town issued a Request for Proposals with respect to the lease of the golf course restaurant. In that Request, the Town specified that the lease would be for a period of fifteen years, with the base rent subject to an annual increase based on the Consumer Price Index.
The form lease attached to the Request for Proposals also specified that the lessee was to “be open for business and offer complete food and beverage service during all such hours and on all such days that the Westborough Country Club is open to the public.”[1] The lessee was also required to operate the dining room “with a full lunch and dinner menu” seven days a week year round (i.e., even during those months that the golf course was not open), with some options to apply for brief closures of the restaurant during certain off-season weekdays and holidays.
The Request for Proposals solicited proposals with respect to price, proposed hours of operation, type of service, and menu. An evaluation committee was designated to evaluate the non-price portions of the proposals pursuant to G.L.c. 30B, §6(e). The criteria to be used by the evaluators included the proposer’s restaurant experience, proposed operating hours, type of restaurant service and menu, experience holding an alcohol license, compliance with handicap access and building codes, time frame for completion of the renovations, and performance and payment bonds.
In addition to restaurant experience, the evaluation criteria also included a separate factor for “similar facilities (restaurant) operations experience at a municipal golf course.” Under that factor, a proposal from someone with three or more years of experience operating a restaurant on a municipal golf course would be rated “highly advantageous,” a proposal listing one to two years of such experience would be rated as “advantageous,” a proposal listing less than one year of such experience would be rated “not advantageous,” and a proposal listing no prior experience operating a restaurant on a municipal golf course would be rated as “unacceptable.” Inasmuch as Pardee had operated the restaurant at the Westborough municipal golf course for some ten years, inclusion of this criterion guaranteed that Pardee’s proposal would get a rating of “highly advantageous” on at least one factor in the rating. Inasmuch as there are only three or four municipal golf courses in the entire state that have a restaurant on the premises, inclusion of this criterion also made it extremely unlikely that any other proposal would even qualify on this factor, let alone obtain an “advantageous” or “highly advantageous” rating.
In October 1994, the Town received three responses to its Request for Proposals, one from Pardee, one from plaintiff Hack’s & Hack’s, Inc., and one from J & T Enterprises. The J & T Enterprises proposal was deemed unacceptable, and J & T Enterprises did not pursue its interest in the restaurant lease. Thus, the competition for this lease is between Pardee and Hack’s & Hack’s.
The Hack’s & Hack’s proposal offered the Town base rent of $2,150 per month plus 5% of the restaurant’s net profit. It also offered the proceeds from yearly fund raisers run by Hack’s & Hack’s, with a guaranteed minimum of $100,000 over the course of the lease. Pardee’s price proposal was $1,500 per month, with nothing added in the way of any percentage of profits or other premium payment. In his proposal, Pardee also did not agree to include the annual rent escalator based on the Consumer Price Index, proposing instead that the rent remain the same for the first five years and only be subject to escalation thereafter. The Hack’s & Hack’s proposal had not deviated from the specification in the Request for Proposal that the base rent be subject to the escalator provision starting in the second year of the lease.
With regard to the non-price criteria, the evaluation team rated both Pardee’s and Hack’s & Hack’s restaurant experience as “highly advantageous.” On the criterion of operating times and hours, Hack’s & Hack’s was rated “highly advantageous,” while Pardee was rated as “advantageous.” The committee noted that Pardee could have been rated higher on this criterion “if hours were clarified.” On the factor for restaurant type and service delivery, Hack’s & Hack’s again rated a “highly advantageous," while Pardee received the lower grade of “advantageous,” again with the notation that Pardee’s rating could have been higher “if menu was submitted.”
With regard to experience operating a restaurant at a municipal golf course, Pardee of course received a rating of “highly advantageous,” while Hack’s & Hack’s (having no such experience) was rated as “unacceptable.” The evaluators did note on this factor that Barry Hackett, one of the owners of Hack’s & Hack’s, was “an active member of Westborough Country Club and is familiar with golf course operations.” However, despite eighteen years of restaurant experience, Hack’s & Hack’s had to be rated as “unacceptable” on this criterion because it had not operated a restaurant that sat on a municipal golf course.
*106 On the factor of liquor license experience, both proposals were rated as “highly advantageous.” Both proposals were rated as “not advantageous” on the factor for handicap access and building codes, with the notation for both that more detail was needed. On the timetable to complete the renovations, Hack’s & Hack’s was rated as “highly advantageous,” while Pardee was rated as “not advantageous,” with the notation that Pardee’s timetable was “ambiguous.” Both proposals were rated as “advantageous” with respect to the factor for performance and payment bonds.
Thus, Hack’s & Hack’s and Pardee’s were given the same rating on four of the eight criteria, Hack’s & Hack’s was given a higher rating than Pardee on three of the eight criteria, and the only criterion on which the Pardee proposal rated higher than Hack’s & Hack’s was the criterion for prior experience operating a restaurant on a municipal golf course. The Pardee proposal was given a composite rating of a “low advantageous,” with the notation that the Pardee “proposal presentation is mediocre.” Because of the “unacceptable" rating on the one factor for prior experience operating a restaurant at a municipal golf course, the committee gave Hack’s & Hack’s a composite rating of “unacceptable.” The evaluators noted, however, that the Hack’s & Hack’s “proposal presentation is very good.”
With the Hack’s & Hack’s proposal and the J & T Enterprises proposal both rated as “unacceptable,” three Town selectmen voted to award the fifteen-year lease of the golf course restaurant to Pardee. Two selectmen voted to reject all bids, expressing concern that the criterion for experience operating a restaurant on a municipal golf course was not intended as a factor that would disqualify a proposal. Thus, by a 3-2 vote, the selectmen decided to award the lease to Pardee.
On December 13, 1994, the present lawsuit was filed challenging the selection of Pardee on various grounds. On December 22, 1994, this court (Lauriat, J.) issued a preliminary injunction, enjoining the Town from executing any lease or contract for the restaurant pending further order of the court. The court’s order allowed Pardee to continue the restaurant operation according to the terms of his prior lease pending further order of the court.
In January 1995, the Town realized that it had failed to advertise its Request for Proposals in strict conformity with the requirements of G.L.c. 30B, §§6(c) and 5(c).[2] The Town therefore decided that it would begin the process again and issue another Request for Proposals.
The second Request for Proposals was essentially identical to the first, including the same eight evaluation factors to be utilized in rating the proposals. In February 1995, responses were received from Pardee and from Hack’s & Hack’s.[3] The same evaluation team was again asked to rate the second round of proposals.[4] On March 1, 1995, the team submitted its evaluation to the Town.
On the second round, the Pardee and Hack’s & Hack’s proposals were rated as follows: Again, both proposals were rated “highly advantageous” on the criterion of restaurant experience. On operating time and hours of service, Hack’s & Hack’s again scored higher with a rating of “highly advantageous,” while the Pardee proposal was rated as “advantageous.”[5] Again, both proposals rated a “highly advantageous” on the factor for restaurant type and service delivery. On the factor for prior experience operating a restaurant on a municipal golf course, Pardee was scored as “advantageous” while Hack’s & Hack’s scored “not advantageous. ”[6]
Both proposals again received a rating of “highly advantageous” on the factor of experience with holding an alcohol license. With regard to Hack’s & Hack’s liquor license, the team made the following notation: “Bob Kays carries license, Jan Hackett manages. Whose name will be on WCC [Westborough Country Club] license?” On Pardee’s liquor license, the team noted, “WCC owns but John Pardee controls license.” The team then explained its understanding of what was meant by this factor: “We feel the intent was to have responsible party oversee distribution of alcohol and that both parties have such experience.”
The team again had difficulty rating the proposals on the quality of the proposed renovations for handicap access and code compliance, deciding that it could not give either a composite rating on this factor but rating the proposals as “basically equal.” On the timetable for renovations, both proposals were rated as “advantageous,” and on performance and payment bond, both proposals were rated as “advantageous.”
Thus, on this second round, the two proposals were rated the same on six out of the eight scoring criteria. On hours of operation, Hack’s & Hack's had been rated higher than Pardee. On experience operating a restaurant on a municipal golf course, Pardee had been rated higher than Hack’s & Hack’s.
The evaluation team summarized its views of the two proposals in a cover letter to the Town as follows:
The Team rated both proposals as Advantageous and feels both proposals would be acceptable. The Team rated Hack’s & Hack’s, Inc. proposal as highly advantageous under hours of service (14V2 to 19 hours daily) versus On The Green’s proposal as advantageous (9V2 or lOlfi hours daily). The Team rated On The Green’s proposal as advantageous under municipal experience versus Hack’s & Hack’s, Inc.’s proposal as nonadvantageous. The Team felt these two differences were the primary differences and did not feel it could recommend what item took precedence, hours of service or municipal experience.
*107 Therefore, the Team decided to rate the two proposals as equal, and to recommend that the decision be based on the price portion of the proposal.
In other words, the evaluators concluded that the proposals were “equal” as to the non-price portions, with the lease to be awarded to the proposal that offered the highest payment to the Town.
The evaluation team also made certain “recommendations” of items to be addressed before formalizing an award of the lease. Those items included verification of sales projections to make sure that they were realistic and capable of supporting both the renovation costs and the payments to the Town,[7] a reference check to verify the vendor’s experience, verification that certain required items would in fact be on the menu (with the observation that the Pardee menu may not have all the items), verification with the building inspector that the renovation plans would meet requirements and that the costs were reasonable, and confirmation of Hack’s & Hack’s schedule for compliance with handicap access requirements. With regard to the liquor license, the team also recommended as follows: “If Hack’s & Hack’s, Inc. is selected, the selectmen should check to see whose name will be on the all alcohol license.”
The price portion of the second round of proposals was then opened and reviewed. Pardee again offered to pay $1,500 per month rent and again “request(ed) that this amount be fixed for the first five years.” Pardee proposed that the annual rent adjustment per the Consumer Price Index commence only at year six of the lease. The Hack’s & Hack’s proposal had increased the base rent offered from $2,150 per month in its first proposal to $2,175 per month in its second proposal. Hack’s & Hack’s again offered an additional payment of 5% of the restaurant’s net profits. It again offered the proceeds from yearly fund raisers run by Hack’s & Hack’s, with a guaranteed minimum of $100,000 over the course of the lease.
Thus, on the base rent component of the proposals, the Hack’s & Hack’s proposal offered to pay $121,500 more than Pardee. Adding in Hack & Hack’s commitment to pay at least a $100,000 premium over the course of the lease, that dollar difference between the two proposals increases to at least $221,500. The added payments of 5% of net profits would add further to the dollar value of the Hack’s & Hack’s bid, as would the fact that the Consumer Price Index escalator would be applied to a higher number in each and every year of the lease, thus resulting in a higher dollar increase.
Despite the evaluation team’s assessment that the non-price factors of the two proposals were equal, the team’s recommendation that the lease be awarded to the financially superior proposal, and the obvious superiority of the price portion of Hack’s & Hack’s proposal, the Town selectmen again voted 3-2 to award the lease to Pardee.
Discussion
Plaintiffs contend that the Town’s handling of this procurement and its decision to award the lease to Pardee violates the Uniform Procurement Act (G.L.c. 30B) in numerous respects. They seek a declaration that the award to Pardee is invalid and a court order that the lease be awarded to Hack’s & Hack’s. The court will first address each of the violations that plaintiffs have asserted and then address the issue of an appropriate remedy.
I. Responsiveness of Pardee proposal
Plaintiffs argue that Pardee’s proposal was not responsive to the Request for Proposals in that a) it did not meet the stated specification of the Consumer Price Index escalator in its, price proposal, and b) it did not meet the stated specification that the restaurant be open for business during all hours that the club itself was open.
The Uniform Procurement Act requires that the chief procurement officer (in this case, the Town selectmen) determine “the most advantageous proposal from a responsible and responsive offeror.” G.L.c. 30B, §6(g). The Act defines a “responsive bidder or offeror” as “a person who has submitted a bid or proposal which conforms in all respects to the invitation for bids or request for proposals.” Id., §2. It has long been a tenet of essentially all public bidding statutes that bids or proposals that do not meet the minimum specifications, or which deviate from the requirements set forth in the invitation or request, are not eligible for the contract award. See, e.g., Grande & Sons, Inc. v. School Housing Committee of North Reading, 334 Mass. 252, 255-56 (1956). While the Town points out that the present case involves a Request for Proposals and not an invitation to bid, the Uniform Procurement Act contains the same basic requirement that a proposal must conform to the requirements set forth in the request in order to be eligible.
The Pardee proposal does not conform to the Request for Proposals. The Request, attaching a copy of the lease being awarded, included as one of its terms the Consumer Price Index escalator applied annually starting with the second year of the lease. The persons submitting proposals could submit their proposed amounts of monthly base rent (to which the escalator would be applied), but nowhere was it left open for proposals to delete or modify the escalator term itself. Pardee proposed a flat $1,500 per month for the first five years of the lease. That proposal simply failed to comport with a stated specification in the Request for Proposals. As such, Pardee was not a “responsive offeror” and his proposal could not be accepted.
At oral argument, the Town indicated that the lease that would actually be signed with Pardee would be true to the lease originally set forth in the Request— i.e., that it would apply the Consumer Price Escalator to the base rent starting in the second year of the lease. *108 In other words, the Town is allowing Pardee to modify his proposal so as to comport with that specification. After the bids or proposals are opened, “a bidder may not change the price or any other provision of the bid in a manner prejudicial to the interests of the governmental body or fair competition.” G.L.c. 30B, §5(f).[8] Allowing Pardee to increase the rental offer made to the Town, after the bids have been opened, would be prejudicial to the interests of fair competition. The entire process of submission of sealed bids and sealed proposals is to encourage bidders and offerors to make what is truly their best offer in the package as submitted. Allowing parties to adjust their offers, after they see what others have submitted, is contrary to the most basic premise of public contracting law. Pardee submitted to the Town what was apparently not his best price offer. He is improving his price offer now that he knows how seriously he has been outbid by Hack’s & Hack’s and now that litigation is pending raising the issue of his failure to meet the specifications in the Request for Proposals. The Act’s limited provision for modification of a bid or proposal is not intended as a way to allow a non-responsive price proposal to belatedly transform itself into a responsive one.[9] See also Office of the Inspector General, Municipal, County, District, and Local Authority Procurement, p.88 (advising public officials that a proposal’s “plan of services” may be revised, but that “specifications, scope of services, contract terms, and price are nonnegotiable under Chapter 30B”).[10]
Pardee’s proposed hours of operation also do not comport with the specifications in the lease being offered by the Town. The lease attached to the Request for Proposals called for the restaurant to be “open for business and offer complete food and beverage service during all such hours and on all such days that the Westborough Country Club is open to the public.” During the golf season, the club is open to the public starting in the early morning. Pardee’s proposal set the opening time for the restaurant at 11:30 a.m., an opening time long after the club facility was open to golfers. While the lease does not make specific reference to “breakfast,” the lease does require that the restaurant be open with “complete food and beverage service” starting with the morning hours during those times of the year that the golf course is open. Whether the restaurant offers a full breakfast menu or merely continental breakfast is not specified, but it must be at least “open for business.” Pardee’s proposal did not even include beverage service during the morning hours, let alone “complete food and beverage service.” The proposal was not responsive.[11]
As a non-responsive offer, the Pardee proposal was not eligible to be awarded the lease under §6(g). Any lease entered into with Pardee would be invalid. § 17(b).
II. Overly restrictive criterion
As an additional and independent ground on which to invalidate the award to Pardee, plaintiffs argue that the evaluation criterion of prior experience operating a restaurant at a municipal golf course was overly restrictive, designed to favor Pardee by insuring that only Pardee would get a high rating on that factor. With only two or three other restaurants located on municipal golf courses in the entire state, most people in the local restaurant industry have no experience operating a restaurant on a municipal golf course. Pardee would obviously have such experience, but it would be unlikely in the extreme that any other offeror would have such experience.[12]
The criteria on which proposals will be evaluated are to be set by the chief procurement officer and stated in the request for proposals. §6(b)(2). The listed criteria “shall include all standards by which acceptability will be determined as to qualify, workmanship, results of inspections and tests, and suitability for a particular purpose, and shall also include all other performance measures that will be utilized.” §6(e). The evaluation of non-price factors is to be “based solely on the criteria set forth in the request for proposals." Id. There is no express prohibition on use of a criterion that would limit the acceptable offeror to a single individual or entity.
With regard to contract specifications, the Act does seek to avoid the setting of specifications that would effectively limit the supplier to a particular source:
Unless no other manner of description suffices, and the procurement officer so determines in writing, setting forth the basis for the determination, all specifications shall be written in a manner which describes the requirements to be met "without having the effect of exclusively requiring a proprietary supply or service, or a procurement from a sole source.
G.L.c. 30B, §14. While an evaluation criterion used under §6(e) is not the same as a “specification,” a criterion that would effectively exclude all but one potential offeror would be contrary to the policy articulated in §14.
To date, the Supreme Judicial Court has yet to determine whether an overly restrictive specification would be a sufficient basis on which to invalidate a bid. See Datatrol, Inc. v. State Purchasing Agent, 379 Mass. 679, 702 (1980). There was some discussion of the problem in Pacella v. Metropolitan District Commission, 339 Mass. 338, 346 (1959), in which a contractor protested that a particular specification would limit the contractor’s choice of supplier to a single supplier. In Pacella, the court noted that that specification did not serve to .prevent any contractor from bidding on the work or affect the contractor’s likelihood of getting the contract. All bidders had to use a particular type of pipe that was made by one manufacturer, but nothing gave any contractor any advantage over another in the bidding process.[13]
The present case squarely raises the problem of an overly restrictive term in public bidding being used as *109 a means to favor one particular bidder over all others. Unlike Pacella, the criterion employed here did not merely limit a proposal’s choice of suppliers or subcontractors. It served to eliminate essentially all other qualified competitors for this lease.
Under such circumstances, the court should examine whether there is any rational basis for such a restrictive criterion. While there may certainly be circumstances in which a criterion leading to only one vendor or supplier would be a legitimate articulation of a municipality’s needs, the absence of any such rationale for the imposition of the restrictive criterion would be a strong indication that the contract award was the product of improper favoritism. See Pacella, 339 Mass. at 346 (“ingeniously contrived specifications operating to the benefit of a particular bidder or subsupplier . . . could hardly be permitted to thwart the legislative objective” of public bidding).
In the present case, it would certainly be appropriate for the Town to consider each proposer’s prior experience in the restaurant industry. That criterion was properly included, and both Pardee and Hack’s & Hack’s rated as “highly advantageous” in the category of restaurant experience.[14] While it might also be appropriate to consider the proposer’s experience or familiarity with golf or with municipal sports facilities, no such criterion was listed. The only type of experience or familiarity with golf that was taken into consideration was the precise experience of operating a restaurant at a municipal golf course. There does not appear to be any basis for insisting that the proposer’s restaurant experience stem from a restaurant “at a municipal golf course.”
When asked the basis for including such a limited criterion on the evaluations, the only ostensible basis the selectmen articulated was that the Westborough golf course and restaurant had limited parking and that the operator of the restaurant would therefore have to work around the fact that golfers’ vehicles in the parking lot would restrict the number of parking spaces available for restaurant patrons. The selectmen implied that there was some difficulty in serving “two masters,” the golfers and the diners, who would all have to be accommodated in the same space.[15]
It is absurd to suggest that restaurants on municipal golf courses are the only restaurants with limited parking, or the only restaurants which must share limited parking spaces with other enterprises. Nor is there anything to suggest that all or even most restaurants at municipal golf courses have comparably limited parking. If the selectmen were legitimately concerned about the lessee’s ability to handle this allegedly difficult balance between the parking needs of the golfers and the parking needs of the restaurant patrons, they could have described some evaluation criterion that actually addressed that issue. The evaluation criterion did not give a proposal credit for experience in handling difficult parking or transportation problems while managing a restaurant. Nor, in the unlikely event that anyone other than Pardee came forward with experience operating a restaurant on a municipal golf course, would that experience necessarily entail experience handling difficult parking limitations. As worded, the criterion did not even address the purported justification that the Town now puts forward.
Plaintiffs have also submitted additional evidence suggesting that the evaluation criterion concerning restaurant experience at a municipal golf course was deliberately included so as to favor the Pardee proposal. Pardee’s lease was up for renewal in 1990, after the 1989 passage of the Uniform Procurement Act. In June 1990, the Town sent Pardee a letter, explaining why it could no longer simply award him a new lease without going through public bidding. The letter included the following: “It is the Town’s intention to follow the law, and we must, regrettably, open the process to any interested party.”
Of more recent note, and as direct evidence that various selectmen intended to award the lease to Pardee even prior to review of the proposals, plaintiffs have submitted the deposition of Lee Bourgoin, the former Town Coordinator for the Town of Westborough. Bourgoin stated that he had been opposed to the inclusion of the evaluation criterion of experience operating a restaurant at a municipal golf course and that he had voiced that objection. When asked to identify which selectmen were supporting the inclusion of that criterion, Bourgoin responded as follows:
A. I believe that Mr. Drewry wanted that in there. I also believe that the selectmen as a whole felt that this was — this operation had been in existence for a few years, and that previous attempts at restaurant operations there had not done well, so for that reason they wanted to support it. They wanted to maintain the operation if they could.
Q. They wanted to maintain the operation with Pardee in charge; is that fair to say?
Mr. Dodd: Objection.
A. The one that had been successful.
Q. Which is Mr. Pardee?
A. The one that had been continuing, yes.
While this exchange at Bourgoin’s deposition is somewhat cryptic as to how Bourgoin perceived that selectmen wanted, prior to the Request for Proposals going out, to continue with Pardee as the tenant, Bourgoin himself raised this aspect of the selectmen’s wishes in response to questioning about the selection of the restrictive criterion.
In the absence of any rational basis for inclusion of this criterion, and with some evidence suggesting that various selectmen were already of the view that they wished to keep Pardee as lessee, the court concludes *110 that the use of this restrictive criterion was a deliberate attempt to introduce into the process a factor that would favor Pardee’s proposal and create an excuse for rejecting all other proposals, no matter how superior to Pardee’s they were. While the court should show great deference to the wisdom and judgment of municipal officials in setting what factors they wish a proposal to address, that deference does not compel the court to ignore the arbitrary selection of restrictive factors or specifications that are designed to evade and undermine the clear import of the Uniform Procedures Act. Bad faith “stacking the deck” to benefit insiders is what public bidding laws are designed to prevent. While the Supreme Judicial Court has not ruled on the issue, the court is satisfied that the subversion of the Uniform Procurement Act perpetrated in this case is sufficiently gross that the award to Pardee resulting from that subversion must be set aside.
III. Selection of Pardee’s inferior price proposal
Plaintiffs also complain that the Town selected the Pardee proposal despite the fact that Pardee’s price proposal was so obviously inferior to Hack’s & Hack’s. Defendants correctly point out that the requests for proposals process under §6 does not require the chief procurement officer to select the best price, but rather gives the officer discretion to take into account the non-price aspects of a proposal as well.[16] Indeed, in order to proceed with requests for proposals under §6 as opposed to bidding under §5, the officer must determine in writing “that selection of the most advantageous offer requires comparative judgments of factors in addition to price.” Thus, the fact that the chief procurement officer selects a proposal that did not offer the best price does not ordinarily offend §6.
However, the assumption that underlies the officer’s discretion to determine the balance between price and the non-price strengths or weaknesses of a proposal in §6 is that, ordinarily, a proposal that offers more in the way of non-price factors will probably not be the most advantageous price. The question of whether the benefits in the non-price factors are sufficient to warrant the higher cost to the Town would be left to the discretion of the Town’s chief procurement officer.
In this case, however, the two proposals were rated as “equal” on non-price factors. (But for the use of an overly restrictive criterion, the Hack’s & Hack’s proposal would have achieved a higher rating on non-price factors than Pardee.) The evaluation team’s express decision was that the non-price factors did not provide a basis for choosing one proposal over another and that therefore the award should go to the proposal that offered the Town the best price. In other words, there were no trade-offs between price and non-price factors to be made.
The statute is silent as to whether the chief procurement officer must defer to the ratings given by the persons assigned the task of evaluating the non-price aspects of submitted proposals. The statute does mandate a system whereby the evaluators are deliberately kept ignorant of the price associated with each proposal, presumably so that the evaluation of the non-price factors will not be influenced by price issues. It would be odd to set up such a careful system for objective evaluations of non-price factors and then allow the chief procurement officer to ignore the results of those evaluations. However, §6(g) leaves it up to the chief procurement officer to “determine the most advantageous proposal from a responsible and responsive offeror taking into consideration price and the evaluation criteria set forth in the request for proposals.” It does not specify that the chief procurement officer must accept the ratings given by the evaluation team.
Given the statute’s wording, it would be inappropriate to rule that a chief procurement officer violates §6 merely by failing to accept the results of the evaluation process from the independent evaluators. In that sense, the selection of Pardee’s inferior price when the evaluators had rated the proposals as “equal” does not violate any express provision of the statute.
What this irrational and unexplained rejection of the evaluators’ assessment does do, however, is add strong circumstantial evidence to plaintiffs’ claim that the Pardee proposal received improper favoritism in the selection process. The rating of these two proposals as “equal” was extremely generous to Pardee. It effectively treated Pardee’s experience operating a restaurant on a municipal golf course (an irrational criterion as described above) as of equal importance to Hack’s & Hack’s offer to provide many more hours of service, including a full breakfast menu.[17] In selecting Pardee, the Town has forfeited over $220,000 in revenue, all for no advantage from any non-price aspect of the proposal. Eliminating the unfair and overly restrictive criterion of experience operating a restaurant on a municipal golf course, the Town is giving up over $220,000 in revenue to award the lease to a tenant that obviously offers the Town less in the non-price aspects of the proposal. This unexplained and inexplicable selection of a proposal that is inferior on both price and non-price aspects strongly suggests that improper favoritism motivated the Town’s selection of the Pardee proposal. While there does not appear to be any standard for review of a chief procurement officer’s discretionary selection of the “most advantageous proposal,” a gross abuse of discretion may, as it does in the present case, combine with other evidence to convince the court that the award must be invalidated as the product of impermissible favoritism.
IV. Remedy
Plaintiffs contend that the appropriate remedy is to award the lease to Hack’s & Hack’s. The Town contends that, if the award to Pardee is invalidated, the Town should be allowed to reissue a new request for proposals. The Town argues that the Hack’s & Hack’s *111 proposal itself was not responsive to the original Request, and that, even if Hack’s & Hack’s was responsive, the court has no authority to make the selection amongst competing proposals.
The alleged nonresponsiveness of the Hack’s & Hack’s proposal is frivolous. Nowhere, in either the first or second round of proposals, did any evaluator determine that the Hack’s & Hack’s proposal was not responsive. The alleged problem with the Hack’s & Hack’s proposal is that its liquor license experience stems from a license held by one Bob Kays, who is one of the three Directors -of Hack’s & Hack’s, Inc.[18] Nowhere does the Request for Proposal or the draft lease specify in whose name the proposer’s previous alcohol license(s) be held. The evaluation criterion pertaining to liquor licenses was for “experience with holding all alcohol license (pouring).” Whether the license was under the name of the corporation, or under the individual name of a director of that corporation, does not affect a proposer’s “experience” with liquor licenses.[19] The evaluators, quite sensibly, interpreted this criterion as calling for experience having responsibility for distribution of alcohol under an all alcohol license, not for a technical assessment of the name under which that license was held. Giving Hack’s & Hack’s credit for its twenty years’ experience with an all alcohol license, and giving Pardee credit for his ten and a half years’ experience with an all alcohol license, the evaluators determined that both proposals were “highly advantageous” on this criterion.[20] As such, the Hack’s & Hack’s proposal remains as a responsive proposal with a composite rating of “advantageous” as determined by the independent evaluators.
With the Pardee proposal now disqualified as not responsive, and with the history of favoritism inextricably linked to the Pardee proposal, plaintiffs argue that it would be extremely unfair to reopen the entire process and have yet another round of proposals. Pardee has already had two chances to submit his proposal, including one chance with full knowledge of the particulars of his competitors proposals.[21] Normally, the Town would have the option of rejecting all proposals if doing so “serves the best interests of the governmental body.” G.L.c. 30B, §9. That option, however, is not available simply as a means to give non-responsive bidders or offerors a chance to correct the defects in their bids or proposals. See Petricca Construction Co. v. Commonwealth, 37 Mass.App.Ct. 392, 395-97 (1994).
The Town has already had two chances to shed itself of its favoritism for Pardee and to select objectively the most advantageous proposal. The first Request for Proposals was infected by favoritism. The second Request for Proposals, despite the fact that litigation was pending alleging favoritism and despite the selectmen’s knowledge that their justification for selecting Pardee would be subjected to court scrutiny, was still hopelessly pervaded by favoritism. A third round of proposals would merely give both Pardee and those selectmen who favor him another opportunity to invent an excuse for awarding this lease to Pardee.
At present, there is a responsible and responsive proposal from Hack’s & Hack’s, a proposal that offers the Town both expanded hours of service and a much better price.[22] The independent evaluators recommended that Hack’s & Hack’s be awarded the lease if its price proposal were better than Pardee’s. Two of the Town’s five selectmen voted to award the lease to Hack’s & Hack’s. The court is not substituting its judgment for that of Town officials in ordering that the lease be awarded to Hack’s & Hack’s. It is merely enforcing the Uniform Procurement Act.
The court is mindful that, to many townspeople and to the selectmen that have backed the Pardee proposal, the selection of Pardee was simply an application of the principle “if it ain’t broke, don’t fix it.” Satisfied with Pardee’s performance over the last ten years, they are reluctant to replace him with a new lessee. That view is understandable, but the Uniform Procurement Act requires that other principles must also be honored in the awarding of public contracts. In the interest of fair and open competition, in the interest of the public fisc, and in the interest of preventing favoritism and corruption in public contracts, the Uniform Procurement Act mandates that public contracts and leases be opened up to other competitors. Existing contractors must, no matter how long and successful their contractual relation with a government agency or municipal body, be prepared to face competition from other providers, who may be willing to offer the public better goods, better services, or better prices. When such a competitor comes along, the desire to simply stay with the provider who has serviced the Town’s needs previously must yield to the benefits that open competition have presented.
ORDER
For the foregoing reasons, plaintiffs’ motions for permanent injunction and entry of declaratory judgment are ALLOWED and defendants’ motion for entry of declaratory judgment is DENIED. It is hereby ORDERED that judgment enter in favor of plaintiffs declaring that plaintiff Hack’s & Hack’s, Inc. is the only responsible and responsive offeror to the Town of Westborough’s Request for Proposals for lease of the restaurant at the Westborough Country Club and ordering that said lease be awarded to plaintiff Hack’s & Hack’s, Inc.

The golf course is normally open from 6:30 a.m. or 7:00 a.m. until 6:00 p.m. or 7:00 p.m. during the spring, summer and fall seasons (approximately eight months each year).

This oversight appears inadvertent. The only defect was the Town’s failure to advertise the Request in the Central Register. The previous lease award had not needed to be advertised in the Central Register (as it was a smaller contract), and the Town had inadvertently used the identical advertising procedures without appreciating that the larger *112 dollar amount at issue required an additional advertising step. G.L.c. 30B, §6(c).

No proposal was submitted by J & T Enterprises on the second round of proposals.

Under G.L.c. 30B, §6(d), the persons evaluating the non-price aspects of a proposal are not to be informed of the monetary aspects of the proposals they are evaluating. Thus, this team was not aware of the prices submitted in the second round of proposals at the time they did their evaluations. However, it is hard to envision that the team was ignorant of the tremendous price differential that had been revealed in the first round of proposals, or that the team was ignorant of the close 3-2 vote that had awarded the lease to Pardee on the first round. Both this split vote on the lease to Pardee and the present lawsuit have been the subject of significant local publicity, and the dispute is a niatter of considerable controversy within the Town. The evaluators were not conducting the second evaluation in the detached circumstances that the statute envisions. No one has suggested that the evaluators did not perform their second evaluation with the requisite objectivity and good faith, but it was asking a great deal of them to expect them to set aside their prior knowledge of these proposals and the ensuing controversy and evaluate the second round as if the matter were before them for the first time.

The team noted that Hack’s & Hack’s would have the restaurant open nineteen hours a day during the golf season and fourteen and a half hours a day during the off season. Pardee proposed to have the restaurant open for ten and a half hours during the golf season and nine and a half hours a day during the off season. The Hack’s & Hack’s hours included service of breakfast starting at 6:00 a.m. during the golf season, whereas Pardee proposed opening at 11:30 a.m. for lunch.

Given that the scoring criterion had not changed, there is no explanation for these ratings. Pardee’s ten years of experience were certainly over the three'year mark needed to score a “highly advantageous” on this factor. Hack’s & Hack’s still had no experience running a restaurant on a municipal golf course which, according to the scoring levels previously set for this factor, should have amounted to a rating of “unacceptable.” Following the results of the first round, some concern had been expressed by certain selectmen (as reflected in the minutes) that this highly restrictive criterion had operated so as to exclude Hack’s & Hack’s from consideration. Although the stated factor and its accompanying scoring levels were not changed, the evaluators appear to have had some awareness that lack of any experience operating a restaurant on a municipal golf course was not a factor that should disqualify any proposal. This again highlights that the evaluators were not unaware of the controversy that had surrounded the results of the first round of proposals.

This recommendation was not specifically directed at either proposal, as the evaluators did not know the financial terms of the second round of proposals.

The section on requests for proposals specifies that a proposal “may be corrected, modified or withdrawn to the extent provided in [§5(f].” G.L.c. 30B, §6(f) . Thus, there is no difference between modification of a bid and modification of a proposal.

Both the statute and case law have allowed some flexibility where the modification pertains to correction of an obvious clerical error, resolution of some minor ambiguity, etc. G.L.c. 30B, §17 (allowing “minor informalities” in procurement process), Gil-Bern Construction Corp. v. City of Brockton, 353 Mass. 503, 505-06 (1968); Fred C. McLean Heating Supplies, Inc. v. School Building Commission of Springfield, 341 Mass. 322 (1960). Pardee’s deliberate refusal to include the specified rent escalator provision in his proposal is not such a minor or clerical error.

The Town has, in its brief, submitted the Office of Inspector General’s manual as an authoritative source interpreting the requirements of G.L.c. 30B.

The evaluation criteria make the hours of service requirement ambiguous. Given that the scoring criteria called for a “highly advantageous" rating for any proposal that offered “lunch and dinner” and was open “11 hours a day,” it is difficult to envision how a restaurant could be open by 7:00 a.m., stay open for eleven hours (i.e., until 6:00 p.m.) and still serve both lunch and dinner. The terms of the proposed lease seem to call clearly for an early opening of the restaurant on mornings when the club is open for golfers. The scoring factors suggest that the Town did not intend that to be the meaning of the lease. If this were the only item as to which the Pardee bid was non-responsive, it might be unfair to disqualify his offer on this issue alone. This is not, however, the only defect in Pardee’s proposal or in the selectmen’s handling of this Request for Proposals.

The Town points out that, in the first round of bids, J & T Enterprises did report having worked as a waiter, floor manager and head waiter at a golf course during the 1960s. The J & T Enterprises proposal did not specify whether that course was a “municipal” course or not. The evaluation team ranked J & T as “not advantageous” on this criterion, noting that the experience was “over 20 years ago.” It was certainly the case that no one came forward with Pardee’s unique ten years of recent experience in operating a restaurant “at a municipal golf course.”

The Pacella court also noted that the bidding statute applicable to the contract in question merely required that bids be opened in public. It did not otherwise limit the state’s discretion to select the contractor.

Hack’s & Hack’s reported eighteen years’ experience in all facets of restaurant operations. Pardee had ten years’ experience running a restaurant, plus two years’ experience prior to that in a sandwich shop. Both clearly had the requisite level of experience to operate the restaurant in question.

Of course, some substantial number of persons coming to play golf would also be patronizing the restaurant. These two categories of customers on the premises are not separate classes of persons with inherently adverse interests.

If the contract involves payment to the municipality, and the chief procurement officer decides to award the contract to an offeror who did not offer the highest price, the chief procurement officer must “explain the reasons for the award in writing.” §6(i). Plaintiffs complain that no such written reasons have been issued. If this omission were the only defect in the Town’s decision to award the lease to Pardee, the defect could be remedied by ordering the Town to issue its written reasons.

As an amenity at a golf course, the offering of breakfast service would seem to be a major advantage. People getting together with friends to play golf would surely appreciate the opportunity to meet at the club for breakfast and share a meal while waiting for their tee time. The ten taxpayers who have joined as plaintiffs in this suit have done so because of Pardee’s refusal, despite requests, to offer any form of breakfast menu or even beverage service duringthe morning hours. Hack’s & Hack’s proposal to offer a full breakfast menu beginning early in the morning would be vastly superior to a proposal that offered no food or beverage until 11:30 a.m.

The Hack’s & Hack’s proposal indicated that Hack’s & Hack’s had held an all alcohol beverage license for twenty years under Kays’ name and identified Kays as a member of the board of directors.

Indeed, if that criterion required a proposer to have a liquor license in that proposer’s exact name, the Pardee proposal would also fail this criterion. As the evaluators noted, the license used by Pardee at the restaurant is actually *113 owned by Westborough Country Club, not by Pardee in his own name.

The evaluators did suggest that, if Hack’s & Hack’s were awarded the lease, the selectmen should ascertain whose name would be put on the Westborough Country Club license. This suggestion did not transform a proposal that had rated “highly advantageous” on this factor into a proposal that was not responsive on this factor. If the lease were awarded to Pardee, the license would presumably remain the same — i.e., in the name of Westborough Country Club with Pardee in charge of the club. If there were a new restaurant operator, the options would include keeping the old license or operating the restaurant on the Kays license. That this detail would need to be taken care of suggests no infirmity in Hack’s & Hack’s license or Hack’s & Hack’s experience in responsible service of alcohol.

That Pardee did nothing, either by way of price or by way of hours of service, to improve his proposal on the second round does suggest that he had considerable confidence in the strength of his insider status. Knowing that another proposal had seriously outbid him on both price and hours, his failure to respond to that competitive pressure is at least curious.

The selectmen who favored Pardee argue that Hack’s & Hack’s price may not be as good as it looks, pointing out that 5% of the net profit is meaningless if there are no profits. However, even without anything from that 5% provision, Hack’s & Hack’s base rent figure alone is far superior to Pardee’s.