Lemire, James R., J.
The plaintiff, Pitcherville Sand & Gravel, Inc. (“Pitcherville”), was hired by the defendant, Holden Sand & Gravel, Company, Inc. (“Holden”), to deliver fill on a construction project for the defendant, Town of Ashburnham (“Ashburnham”). Holden obtained a bond securing the construction project from the defendant, Travelers Casualty & Surety Company, Inc. (“Travelers”), which it furnished to Ashburnham. After Holden failed to pay Pitcherville for the fill, Pitcherville sued the defendants alleging breach of contract (Count I), unjust enrichment (Count II), breach of contract as a third-party beneficiary (Count III), negligence (Count IV), negligent misrepresentation (Count V), and violations of G.L.c. 93A, §11 (Count VI) against Holden, breach of contract as a third-party beneficiaiy (Count VII), negligence (Count VIII), negligent misrepresentation (Count IX), and violations of G.L.c. 93A, §11 (Count X) against Ashburnham, and breach of contract as a third-party beneficiaiy (Count XI), two counts of negligent misrepresentation (Counts XII and XIII), violation of G.L.c. 176D (X3V], and violations of G.L.c. 93A, §11 (Count XV) against Travelers. This matter is before the court on Ashburnham’s motion for summary judgment as to Counts VII, VIII, IX, and X and Travelers’ motion for summaiy judgment as to Counts X3, XII, XIII, XTV, and XV pursuant to Mass.R.Civ.P. 56. For the following reasons, the defendants’ motions for summaiy judgment are allowed in part and denied in part.
BACKGROUND
The undisputed facts and the disputed facts viewed in the light most favorable to the non-moving party, as revealed by the summaiy judgment record, are as follows.
On August 22, 2005, Ashburnham published a request for bids to provide fill and perform site work (“the Work”) on a project to construct a new public safety facility (“the Project”). Pursuant to the bidding process, Ashburnham made available site specifications for potential bidders to review. The specifications described the Work as follows:
1) [C]ut & fill approved materials & construction operations to stabilize the entire site per the grading plan, including (but not limited to) wetland replication. 2) (E)rosion control to stabilize the site[.) 3) Modification of existing guardrail along Central Street where indicated on the plans. 4) (Rjemoval of existing concrete headwall adjacent to Central Street on the northeastern side of the site, installation of new manhole & new HDPE storm drain *244 extension with rip-rap spillway. 5) [CJonstruction of a new stormwater detention basin, outlet structure & HDPE piping, & spillway rip rap. 6) [EJxcavation as required to bring the site to proposed finished floor elevation where structures will be located. 7) [Ejxcavation as required to bring the site to sub-grade (below pavement gravel) in all exterior vehicle circulation areas).] 8) [E]xcavation and site stabilization as required to bring the site to finished grade in vegetated areas.
In addition, the site specifications dictated that “ [performance and payment bonds in the penal sum of 100% of the total contract price will be required for any contract awarded as a result of this bid. The Contractor shall furnish performance and payment bonds within five (5) days of such notification by the Purchasing Agent.” The site specifications also stated that “)t]his bid is subject to the requirements of Chapter 30B of the Massachusetts General Laws.” Holden submitted a bid to perform the Work. On September 26, 2005, Ashburnham accepted Holden’s bid.
Pursuant to the Project specifications, Holden retained Insurance Marketing Agencies, Inc. (“IMA”) to obtain a bond. For Holden, IMA submitted a “Performance & Payment” bond application to Travelers, which described the Work as:
Insured is delivering 40,00 yards of fill to Central Street (Route 101), Ashburnham. MA and then grading it.
Insured has 150,000 yards of fill on hand which our insured owns and as such does not need to purchase any fill for this job.
Total contract price is $589,500, of which 85% is for the cost of fill which our client already owns. Job should take 45 days and is due to begin on 09/26/05.
Within the application, an IMA agent wrote “$589,500" in a space titled ’’Performance Bond Amt." IMA left blank the space for “Payment Bond Amt.”
Subsequently, Travelers issued a “Contract Bond” (“the Bond”) to Holden for $589,500.00. The terms of the Bond stated that “the Principal has entered, or is about to enter, into a written Agreement with the Obligee for the supply of Jill and site work at New Public Safety Building Route 101, Main Street, Ashburnham, MA as is more specifically set forth in said Agreement, to which reference is hereby made.”
Sometime thereafter, Holden and Pitcherville entered an agreement whereby Pitcherville would supply fill to the Project. Pitcherville complied with this agreement, however Holden failed to pay Pitcherville.[1] On December 15, 2006, Pitcherville notified Ashburnham that Holden owed Pitcherville for materials it supplied to the Project. On December 20, 2006, Pitcherville sent a letter to Holden requesting payment of $66,657.80.[2] On January 5, 2007 and on January 8, 2007, Pitcher-ville sent letters to Ashburnham requesting information as to any bonds that were applicable to the Project. On January 9, 2007, Ashburnham responded to Pitcherville stating that the Bond covering the project was a “performance” bond. However Ashburnham would not disclose the terms of the Bond.
Nevertheless, on January 25, 2007, Pitcherville made a claim on the Bond to Travelers. On March 19, 2007, Travelers denied Pitcherville’s claim, stating that the Bond was a “supply bond." On March 19, 2007, Pitcherville sued the defendants to recover payment for the materia] it provided on the Project. On April 22, 2008, Ashburnham and Travelers filed motions for summary judgment pursuant to Mass.R.Civ.P. 56.
DISCUSSION
Summary judgment is appropriate if there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P 56(c); Cassesso v. Comm’r of Corr., 390 Mass. 419, 422 (1983); Cmty. Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). It is the moving party’s burden to demonstrate affirmatively the absence of a triable issue, and that the summary judgment record entitles him to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Commc’ns Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. Gen. Motors Corp., 410 Mass. 706, 716 (1991).
A. Breach of Contract as a Third-Party Beneficiary against Ashburnham (Count VII)
Pitcherville argues that it is a third-party beneficiary of the contract between Holden and As-hburnham, which Pitcherville contends required Ashburnham to ensure that Holden obtained a payment bond.[3] Conversely, Ashburnham maintains that only a performance bond was required by its agreement with Holden, meaning Pitcherville was not a third-party beneficiary.
In general, “)t]here are two kinds of sureiy bonds, performance bonds and payment bonds. A performance bond simply insures that the contractor will perform the work as contracted ... A payment bond, on the other hand, requires that the contractor pay all subcontractors and materialmen before the owner will make final payment.” Taylor Woodrow Blitman Constr. Corp. v. Southfield Gardens Co., 534 F.Sup. 340, 344 (D.Mass. 1982). While subcontractors cannot lay claim as third-party beneficiaries to a performance bond, subcontractors are intended beneficiaries of payment bonds. Id. at 345; see also Reliance Ins. Co. v. City of Boston, 71 Mass.App.Ct. 550, 560 (2008) *245 (stating that “(t]he acquisition of [a payment bond] provides an additional level of confidence that the project will in fact be completed and that amounts owed to subcontractors, vendors, and others will ultimately be paid’’).
In opposition to Ashburnham’s motion for summary judgment, Pitcherville argues that the site specifications are ambiguous and that there is a genuine issue of material fact as to which type of bond was required. Whether a contract is ambiguous is a question of law for the court. See, e.g., Eigerman v. Putnam Invs., Inc., 450 Mass. 281, 287 (2007). When the wording of a contract is unambiguous, the contract must be enforced on its terms. Id. However, if a contract is ambiguous, the interpretation of the contract’s language creates an issue of fact for a jury to resolve. See Seaco Ins. Co. v. Barbosa, 435 Mass. 772, 779 (2002); Commercial Union Ins. Co. v. Boston Edison Co., 412 Mass. 545, 557 (1992).[4]
On the one hand, the site specifications announce that the contract is subject to the provision of the Uniform Procurement Act, G.L.c. 30B, §1 et seq., which does not require bond procurement. On the other hand, the site specifications explicitly state that Holden was obligated to secure payment and performance bonds and to furnish them to Ashburnham. This language is sufficient to create a genuine issue of material fact as to whether a payment bond was required by the site specification.[5] Therefore, summary judgment in favor of Ashburnham on Count VII of Pitcherville’s complaint is inappropriate.
B. Breach of Contract as a Third-Party Beneficiary against Travelers (Count XI)
In its complaint, Pitcherville contends that Holden and Travelers entered an agreement whereby Travelers would provide a payment bond securing the Project. Pitcherville argues that because Travelers did not provide Holden with a payment bond, it committed a breach of contract. Further, Pitcherville contends that it has the right to enforce Holden and Travelers’ agreement as a third-party beneficiary. In its motion for summary judgment, Travelers maintains that there is no genuine issue of material fact that the Bond is a performance bond to which Pitcherville has no right.
Here, Travelers provided a “Contract Bond” that does not explicitly state whether it is a payment or a performance bond. However, the Bond does reference the site specifications, which call for “performance and payment bonds.” Thus, there is sufficient evidence in the summary judgment record to raise a genuine issue of material fact as to whether the Bond is a performance bond or a payment bond or both. Consequently, Travelers’ motion for summary judgment on Count XI of Pitcherville’s complaint is inappropriate. See Seaco Ins. Co., 435 Mass. at 779.
C. Negligence (Count VIII) and Negligent Misrepresentation (Count IX) against Ashburnham
Pitcherville contends that Ashburnham negligently failed to require Holden to procure a payment bond as dictated by the site specifications. In addition, Pitcher-ville maintains that Ashburnham negligently misrepresented that the Project was secured by both payment and performance bonds. Ashburnham argues that Pitcherville’s negligence and negligent misrepresentation claims are barred by section 4 of the Massachusetts Tort Claims Act, G.L.c. 258. General Laws c. 258, §4 states:
A civil action shall not be instituted against a public employer on a claim for damages under this chapter unless the claimant shall have first presented his claim in writing to the executive officer of such public employer within two years after the date upon which the cause of action arose, and such claim shall have been finally denied by such executive officer in writing and sent by certified or registered mail, or as otherwise provided by this section. The failure of the executive officer to deny such claim in writing within six months after the date upon which it is presented, or the failure to reach final arbitration, settlement or compromise of such claim according to the provisions of section five, shall be deemed a final denial of such claim.
This presentment requirement ensures that the responsible public official receives notice of the claim allowing that official “to determine whether or not a claim is valid, preclude payment of inflated or non-meritorious claims, settle valid claims expeditiously, and take steps to ensure that similar claims will not be brought in the future." Lodge v. Dist. Attorney for the Suffolk Dist., 21 Mass.App.Ct. 277, 283 (1985).
“Disputes over the adequacy of a presentment letter usually arise in one of three contexts: (1) whether notice of a claim was timely; (2) whether the claim was presented to the proper official; and (3) whether the presentment adequately identified the nature of the claim and the legal basis on which liability is alleged.” Koran v. Weaver, 482 F.Sup.2d 165, 169 (D.Mass. 2007). In the first two contexts, strict compliance with G.L.c. 258, §4 is required. See, e.g., Weaver v. Commonwealth, 387 Mass. 43, 47 (1982). Ashburnham maintains that Pitcherville failed to send a presentment letter within two years from the date Pitcherville’s cause of action for negligence arose, and that any letter Pitcherville did send failed to identify the nature of Pitcherville’s negligence and negligent misrepresentation claims.[6] In response, Pitcherville asserts that its January 5,2007, January 8, 2007, and March 7, 2007 letters were timely and sufficiently detailed to notify Ashburnham of Pitcherville’s claims for negligence and negligent misrepresentation. It is unclear on what day Pitcherville alleges that its negligence claim arose. However, Holden entered its agree *246 ment with Ashburnham on September 26, 2005. And, all three of Pitcherville’s letters were sent within two years of that date.
Thus, with respect to the content of a presentment letter, it “should be precise in identifying the legal basis of a plaintiffs claim . . . not so obscure that educated public officials should find themselves baffled or misled with respect to ... a claim which constitutes a proper subject for suit within G.L.c. 258.” Gilmore v. Commonwealth, 417 Mass. 718, 723 (1994) (holding that the plaintiffs complaint for negligent infliction of emotional distress was not surprising given the facts (a murder) he recited in his presentment letter); see also Tambolleo v. West Boylston, 34 Mass.App.Ct. 526, 532 (1993) (holding the plaintiffs presentment letter detailing an assault by police officers was insufficient to notify the town of the plaintiffs claims for emotional distress and negligent supervision); Wightman v. Methuen, 26 Mass.App.Ct. 279, 281-82 (1988) (holding the plaintiffs presentment letter that stated a cause of action for negligent supervision, which G.L.c. 258, §10 barred, was insufficient to notify the town of the plaintiffs claim for failure to provide medical attention).
Here, Pitcherville’s letters were insufficient to notify Ashburnham of Pitcherville’s claims for negligence and negligent misrepresentation. In each letter, Pitcherville requested bond information and recited the fact that Holden had failed to pay Pitcherville for its work. While Pitcherville’s January 8, 2007 letter states that it would be unlawful for Ashburnham to withhold information regarding the Bond, there is no mention or insinuation that Ashburnham behaved negligently or committed a negligent misrepresentation.[7] Accordingly, summary judgment in favor of Ashburnham on Counts VIII and XI is appropriate.
D.Negligent Misrepresentation against Travelers (Counts XII and XIII)
Pitcherville contends that when Travelers denied Pitcherville’s claim on the Bond, Travelers negligently misrepresented that the Bond was a “supply bond,” and not a payment bond securing subcontractors like Pitcherville. Generally, a defendant is liable for a claim of negligent misrepresentation if in the course of his business, he supplies false information for the guidance of others in their business transactions causing pecuniary loss to others by their justifiable reliance on the information, while failing to exercise reasonable care or competence in obtaining or communicating the information. Fox v. F&J Gattozzi Corp., 41 Mass.App.Ct. 581, 587 (1996) (internal quotations omitted).[8]
Even if Travelers mischaracterizes the Bond as a “supply bond,” nothing in the summary judgment record indicates that Travelers guided Pitcherville’s business transactions. Similarly, nothing in the summary judgment record suggests that Travelers failed to exercise reasonable care and competence when it concluded that the Bond was not a payment bond. Madsen v. Erwin, 395 Mass. 715, 721 (1985) (“Con-clusory statements, general denials, and factual allegations not based on personal knowledge are insufficient to survive summary judgment”). Thus, summary judgment in favor of Travelers on Counts XII and XIII of Pitcherville’s complaint is appropriate.
E. Violation of G.L.c. 93A, §11 against Ashburnham (Count X)
Pitcherville alleges that Ashburnham committed an unfair act within the meaning of G.L.c. 93A by failing to ensure that Holden procured a payment bond. However, to make out a G.L.c. 93A claim against a governmental body, the plaintiff must show that that governmental entity was engaged in trade or commerce. United States Leasing Corp. v. Chicopee, 402 Mass. 228, 232-33 (1981) (holding that the town was not engaged in trade or commerce when it signed a lease of computer equipment); M. O’Connor Contr., Inc. v. City of Brockton, 61 Mass.App.Ct. 278, 284-85 (2004) (holding that the city was not liable under G.L.c. 93A because construction of a municipal building was a purely governmental function).[9] Here, like the city in M. O’Connor Contr., Ashburnham was engaged in the construction on a municipal project. Therefore, because Ashburnham was not engaged in trade or commerce, summary judgment on Count X of Pitcherville’s complaint in favor of Ashburnham is appropriate.
F. Violation of G.L.c. 93A, §11 (Count XV) and Violation of G.L.c. 176D (Count XIV) against Travelers
Pitcherville contends that Travelers violated G.L.c. 93A, § 11 by representing to Pitcherville that Holden procured a “supply bond” rather than a payment bond in violation of G.L.c. 176D, §3(1).[10] In addition, Pitcherville asserts a separate cause of action under G.L.c. 176D.
However, G.L.c. 176D itself does not provide a remedy to private parties injured by deceptive insurance practices. See, e.g., Dodd v. Commercial Union Ins. Co., 373 Mass. 72, 75 (1977); Mahaney v. John Hancock Mut Life Ins. Co., 6 Mass.App.Ct. 919, 921 (1978). Therefore, Pitcherville’s independent G.L.c. 176D claim fails. However, violations of G.L.c. 176D serve as evidence of a violation of G.L.c. 93A, §11. See Polaroid Corp. v. Travelers Indem. Co., 414 Mass. 747, 754 (1993); Jet Line Servs., Inc. v. Am. Employers Ins. Co., 404 Mass. 706, 717 n. 11 (1989).[11]
Here, Pitcherville essentially argues that Travelers committed an unfair or deceptive act when it characterized the Bond as a “supply bond” even though the Bond references the site specifications, which call for performance and payment bonds. While there is some evidence in the summary judgment record that Travelers violated G.L.c. 176D, §3(1), Travelers’ denial of Pitcherville’s claim amounts to nothing more than a simple breach of contract. And, a mere breach of *247 contract alone does not amount to an unfair or deceptive trade practice. Mass. Employers Ins. Exch. v. Propac-Mass., Inc., 420 Mass. 39, 42-43 (1995) (holding that in addition to a breach of contract the exertion of leverage to destroy the rights of another party to workers’ compensation constituted an unfair act or practice); see also Whitinsville Plaza, Inc. v. Kotseas, 378 Mass. 85, 100-01 (1979) (holding that allegations the defendant breached a commercial agreement alone were insufficient to support a G.L.c. 93A claim); Pepsi-Cola Metro. Bottling Co. v. Checkers, Inc., 754 F.2d 10, 18 (1st Cir. 1985) (holding that withholding legally owed money as a form of extortion constituted an unfair act). Moreover, nothing in the summary judgment record indicates that Travelers attempted to leverage or destroy Pitcherville’s rights.
Thus, because Travelers’ alleged conduct fails to rise-to the level of an unfair or deceptive trade practice and because G.L.c. 176D does not establish a private right of action, summary judgment in favor of Travelers on Counts XIV and XV of Pitcherville’s complaint is appropriate.
ORDER
For the foregoing reasons, as to Counts VIII, IX, and X of Pitcherville’s complaint, Ashbumham’s motion for summary judgment pursuant to Mass.R.Civ. P. 56 is ALLOWED. As to Count VII, Ashburnham’s motion for summary judgment is DENIED. As to Counts XII, XIII, XTV and XV, Travelers’ motion for summary judgment pursuant to Mass.R.Civ.P. 56 is ALLOWED. With respect to Count XI, Travelers’ motion for summary judgment is DENIED.

 There is no dispute that Ashburnham paid Holden for the Work.

 Pitcherville carbon copied Ashburnham on its December 15, 2006, and December 20, 2006 letters.

 For a third party to make a claim on a contract, it must be clear on the face of the contract that it was made for his benefit. See, e.g., Miller v. Mooney, 431 Mass. 57, 61 (2000).

 Enforcement of an unambiguous contract is a matter of law for the court on a motion for summary judgment. See, e.g., ER Holdings, Inc. v. Norton Co., 735 F.Sup. 1094, 1097 (D.Mass. 1990).

 In addition, the description of the work in the site specifications includes supply of materials and labor. Most public construction projects require the posting of payment and performance bonds. Cf. G.L.c. 149, §§29, 44E; Reliance Ins. Co. v. City of Boston, 71 Mass.App.Ct. 550, 557 (2008) (stating that the city should have been aware of the ordinary relationship between a principal, a surety, and third parties given the general requirement of posting performance and payment bonds on public construction projects). Furthermore, nothing indicates that a municipality cannot solicit bids pursuant to G.L.c. 30B and require payment and performance bonds. In other instances, municipalities have solicited proposals pursuant to G.L.c. 30B and evaluated those proposals based upon a bidder’s ability to furnish payment and performance bonds. See Bowman v. Drewry, Civil No. 94-2765 (Worcester Super.Ct. Jan. 11, 1996) (Sosman, J.) [5 Mass. L. Rptr. 104].

 The parties do not dispute that Pitcherville sent its letters to the appropriate town official. General Laws c. 258, §4 states that “in the case of a city or town, presentment of a claim pursuant to this section shall be deemed sufficient if presented to any of the following: mayor, city manager, town manager, corporation counsel, city solicitor, town counsel, city clerk, town clerk, chairman of the board of selectmen, or executive secretary of the board of selectmen ...” Pitcherville sent its letters to the Town Administrator, the Public Safety Committee, the Board of Selectmen, and the Town Clerk.

 Similarly, the December 15, 2006 and December 20, 2006 requests for payment Pitcherville sent to Holden and carbon copied to Ashburnham fail to identify sufficiently Pitcherville’s negligence and negligent misrepresentation claims.

 A cause of action for negligent misrepresentation differs from an action for fraud in that “liability for misrepresentation does not require a showing that the defendant even knew that the statements made were false or that the defendant actually intended to deceive the plaintiff.” Kitner v. CTW Transp., Inc., 53 Mass.App.Ct. 741, 749 (2002).

 General Laws c. 93A, §2(a) states that “[ujnfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.” General Laws c. 93A, §11 establishes a cause of action for “(a]ny person who engages in the conduct of any trade or commerce and who suffers any loss of money or property, real or personal, as a result of the use or employment by another person who engages in any trade or commerce of an unfair method of competition or an unfair or deceptive act or practice declared unlawful by section two ...”

 General Laws c. 176D, §3(1) dictates that making misrepresentations or engaging in false advertising with respect to an insurance policy constitutes an unfair or deceptive act in the business of insurance.

 In contrast, G.L.c. 93A, §9 incorporates violations of G.L.c. 176D as unfair or deceptive trade practices. See G.L.c. 93A, §9(1); Van Dyke v. St. Paul Fire & Marine Ins. Co., 388 Mass. 671, 675 (1983).